**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Senate in an Order Dated April 10, 1975.

Answered April 30, 1975.

Senate Order Propounding Questions

# State of Maine

### In the Year of Our Lord One Thousand Nine Hundred and Seventy-Five

In Senate, April 10, 1975

**Whereas,** it appears to the Senate of the 107th Legislature that the following is an important question of law and that the occasion is a solemn one; and

**Whereas,** it is the desire of the 107th Legislature to enact legislation to amend the Alcoholism Intoxication and Treatment Act; and

**Whereas,** there is pending before the Senate of the 107th Legislature a bill entitled "AN ACT to Amend the Alcoholism Intoxication and Treatment Act," Senate Paper No. 422, Legislative Document No. 1389; and

**Whereas,** Article I, Section 6-A of the Constitution of the State of Maine provides that no person shall be deprived of life, liberty or property without due process of law; and

**Whereas,** the constitutionality of the proposed bill has been questioned as it relates to the Constitution; and

**Whereas,** it is important that the Legislature be informed as to the answer to the important and serious legal question hereinafter raised; now, therefore, be it

**Ordered,** that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the Senate, according to the provisions of the Constitution on its behalf, their opinion upon the following question, to wit:

QUESTION: Would the provisions of the Legislative Document No. 1389 (Exhibit A) an Act now pending before the Senate of the 107th Legislature, if enacted into law, unconstitutionally deprive a person of life, liberty or property without due process of law in violation of the Constitution of the State of Maine?

EXHIBIT A

# ONE HUNDRED AND SEVENTH LEGISLATURE

**Legislative Document**                                    **No. 1389**

S. P. 422                                    In Senate, April 2, 1975
  Referred to Committee on Judiciary. Sent down for concurrence and ordered printed.
                    HARRY N. STARBRANCH, Secretary
  Presented by Senator Collins of Knox.

## STATE OF MAINE

### IN THE YEAR OF OUR LORD NINETEEN HUNDRED SEVENTY-FIVE

AN ACT to Amend the Alcoholism Intoxication and Treatment Act.

Be it enacted by the People of the State of Maine, as follows:

Sec. 1.  22 MRSA § 1372, sub-§ 1, as enacted by PL 1973, c. 582, § 1, is amended by adding at the end a new sentence to read:

To determine if a person is intoxicated, the police or emergency service patrol may request the person to submit to any reasonable test, including, but not limited to tests of his coordination, breath and coherency of speech.

Sec. 2.  22 MRSA § 1372, sub-§ 2, as enacted by PL 1973, c. 582, § 1, is repealed and the following enacted in place thereof:

2.  Any person who appears to be incapacitated by alcohol or who, as the result of the use of alcohol, is disorderly or is likely to cause or incur physical harm to himself or another, may be taken into protective custody by a law enforcement officer and assisted, with or without his consent, to a public or private treatment facility, an emergency medical service customarily used for incapacitated persons or a police facility. For purposes of this section, the term law enforcement officer shall include state police officers, municipal police officers, sheriffs, deputy sheriffs, state liquor inspectors, game wardens, constables and any person whose duty it is to enforce any criminal law of this State by making arrests. A police facility is any place regularly used for lawful detention of persons.

Whenever a person is assisted to a police facility, the officer in charge of said facility or his designee shall immediately notify the nearest approved public treatment facility that such person is being held in protective custody. If appropriate treatment is available at an approved public treatment facility,

the treatment facility shall, whenever possible, provide transportation to the treatment facility and the police shall transfer custody of the person to the treatment facility. Any person assisted by a law enforcement officer to a police facility shall have the right to make one phone call at his own expense on his own behalf. The officer in charge shall inform the person of this right upon his arrival at the police facility.

No person assisted to a police facility pursuant to this section shall be held in protective custody against his will; provided however, that if appropriate treatment at or transportation to an approved public treatment facility is unavailable such person may be held in protective custody at a police facility until he is no longer incapacitated, disorderly or likely to cause or incur injury to himself or another, or for a period not to exceed 12 hours, whichever is shorter.

The law enforcement officer, in detaining the person and in taking him to an approved public treatment facility, emergency medical service or police facility, is taking him into protective custody and shall make every reasonable effort to protect his health and safety. In taking the person into protective custody, the detaining law enforcement officer may take reasonable steps to protect himself.

A taking into protective custody under this section is not an arrest. No entry or other record shall be made to indicate that the person has been arrested or charged with a crime; provided however, a record of custody shall be made indicating the date and time the person was placed in protective custody, the place of custody, the time of release and the disposition of the person. Such record shall not be treated for any purposes as an arrest or criminal record; it shall be confidential and not made available to the public except upon court order or with the written permission of the person placed in custody or pursuant to proceedings instituted under sections 7119 or 7120. Records of custody shall be made available, upon request, to the Office of Alcoholism and Drug Abuse Prevention for official use only and shall be treated as confidential.

Sec. 3. 22 MRSA § 1372, sub-§ 3, as enacted by PL 1973, c. 582, § 1, is repealed and the following enacted in place thereof:

3. A person who comes voluntarily or is brought to an approved public treatment facility shall be evaluated forthwith by a registered nurse experienced and trained in alcoholism diagnosis or by a licensed physician. The person may then be admitted as a patient or referred to another public or private health facility. The referring approved public treatment facility shall arrange for his transportation.

Sec. 4. 22 MRSA § 1372, sub-§ 4, as enacted by PL 1973, c. 582, § 1, is amended to read:

4. A person, who by medical examination is found to be incapacitated by alcohol at the time of his admission or to have become incapacitated at any time after his admission, may not be detained at the ~~facility~~ approved public treatment facility once he is no longer incapacitated by alcohol, or if he re-

mains incapacitated by alcohol for more than 48 hours after admission as a patient, unless he is committed under section 1373. A person may consent to remain in the facility as long as the physician in charge believes appropriate.

Sec. 5.  22 MRSA § 7118, sub-§ 1, as enacted by PL 1973, c. 566, § 1, is amended by adding at the end a new sentence to read:

To determine if a person is intoxicated, the police or emergency service patrol may request the person to submit to any reasonable test, including, but not limited to, tests of his coordination, breath and coherency of speech.

Sec. 6.  22 MRSA § 7118, sub-§ 2, as enacted by PL 1973, c. 566, § 1, is repealed and the following enacted in place thereof:

2.  Any person who appears to be incapacitated by alcohol or who, as the result of the use of alcohol, is disorderly or is likely to cause or incur physical harm to himself or another, may be taken into protective custody by a law enforcement officer and assisted, with or without his consent, to a public or private treatment facility, an emergency medical service customarily used for incapacitated persons or a police facility. For purposes of this section, the term law enforcement officer shall include state police officers, municipal police officers, sheriffs, deputy sheriffs, state liquor inspectors, game wardens, constables and any person whose duty it is to enforce any criminal law of this State by making arrests. A police facility is any place regularly used for lawful detention of persons.

Whenever a person is assisted to a police facility, the officer in charge of said facility or his designee shall immediately notify the nearest approved public treatment facility that such person is being held in protective custody. If appropriate treatment is available at an approved public treatment facility, the treatment facility shall, whenever possible, provide transportation to the treatment facility and the police shall transfer custody of the person to the treatment facility. Any person assisted by a law enforcement officer to a police facility shall have the right to make one phone call at his own expense on his own behalf. The officer in charge shall inform the person of this right upon his arrival at the police facility.

No person assisted to a police facility pursuant to this section shall be held in protective custody against his will; provided however, that if appropriate treatment at or transportation to an approved public treatment facility is unavailable such person may be held in protective custody at a police facility until he is no longer incapacitated, disorderly or likely to cause or incur injury to himself or another, or for a period not to exceed 12 hours, whichever is shorter.

The law enforcement officer, in detaining the person and in taking him to an approved public treatment facility, emergency medical service or police facility, is taking him into protective custody and shall make every reasonable effort to protect his health and safety. In taking the person into protective custody, the detaining law enforcement officer may take reasonable steps to protect himself.

A taking into protective custody under this section is not an arrest. No entry or other record shall be made to indicate that the person has been arrested or charged with a crime; provided however, a record of custody shall be made indicating the date and time the person was placed in protective custody, the place of custody, the time of release and the disposition of the person. Such record shall not be treated for any purposes as an arrest or criminal record; it shall be confidential and not made available to the public except upon court order or with the written permission of the person placed in custody or pursuant to proceedings instituted under sections 7119 or 7120. Records of custody shall be made available, upon request, to the Office of Alcoholism and Drug Abuse Prevention for official use only and shall be treated as confidential.

Sec. 7. 22 MRSA § 7118, sub-§ 3, as enacted by PL 1973, c. 566, § 1, is repealed and the following enacted in place thereof:

3. A person who comes voluntarily or is brought to an approved public treatment facility shall be evaluated forthwith by a registered nurse experienced and trained in alcoholism diagnosis or by a licensed physician. The person may then be admitted as a patient or referred to another public or private health facility. The referring approved public treatment facility shall arrange for his transportation.

Sec. 8. 22 MRSA § 7118, sub-§ 4, as enacted by PL 1973, c. 566, § 1, is amended to read:

4. A person who by medical examination is found to be incapacitated by alcohol at the time of his admission or to have become incapacitated at any time after his admission, may not be detained at the ~~facility~~ approved public treatment facility once he is no longer incapacitated by alcohol, or if he remains incapacitated by alcohol for more than 48 hours after admission as a patient, unless he is committed under section 7119. A person may consent to remain in the facility as long as the physician in charge believes appropriate.

## STATEMENT OF FACT

Because Maine covers a large geographic area and because there are only approximately 17 residential public treatment facilities, police are required to transport incapacitated persons over long distances, thereby expending valuable manhours and financial resources. The present law thus has a built-in tendency to discourage police from contacting and assisting those who are most in need of their assistance. This bill would remedy this problem, by allowing the police to transport an incapacitated person to an approved public treatment facility or a police station. If the police officer assists a person to a police station, he must immediately inform the nearest treatment facility that such person is being held in protective custody. The burden of transporting the person to a treatment facility then lies with the facility. If the facility arranges for transportation of the person, the police must release any person placed under protective custody to the treatment facility. If the fa-

cility, after being notified, does not make arrangements for the transportation of the incapacitated person to the facility, he may be held at the police station until he is no longer incapacitated or for 12 hours, whichever is shorter.

This bill serves the interests of both the police and the alcoholism treatment community because the public is protected from the disorderly or unlawful actions of the "Saturday night drunk" while at the same time this person is guaranteed an opportunity to receive professional treatment in a noncorrectional setting.

Answer of the Justices

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit our answer to the question propounded on April 10, 1975.

QUESTION: Would the provisions of the Legislative Document No. 1389 (Exhibit A) an Act now pending before the Senate of the 107th Legislature, if enacted into law, unconstitutionally deprive a person of life, liberty or property without due process of law in violation of the Constitution of the State of Maine?

ANSWER: We answer in the affirmative.

■ The predominant, and critical, feature of the proposed legislation is that, while explicitly disavowing applicability of the criminal law and its procedures and sanctions, the bill would authorize law enforcement officials to assert and maintain custodial control of a person "without his consent" potentially for as long as twelve hours in a police facility or forty-eight hours in an "approved public treatment facility."

Yoder v. County of Cumberland, Me., 278 A.2d 379 (1971) emphasized that the freedom of one's person is a "most sacred", "most precious possession." (p. 386) *Yoder* decided, therefore, that the right of a person to be free of governmental custodial restraint is so "fundamental" that consistently with the "due process of laws" clause of Article I, Section 6–A of the Constitution of Maine, its impairment is valid only in circumstances in which (1) an important governmental interest compels it, and (2) the restraint authorized is no greater than is strictly necessary to the fulfillment of such governmental interest.

In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) the Supreme Court of the United States held that federal constitutional "due process" demands that governmental "regulation" abridging " 'fundamental rights' " must be assessed by essentially the same criterion:—that a " 'compelling state interest' " necessitates the limitation and

"legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." (410 U.S. p. 155, 93 S.Ct. p. 728.)

Thus measured, the instant bill violates constitutional "due process of law" because various of its provisions "cast" a "net" of "overbreadth" (Yoder v. County of Cumberland, supra, 278 A.2d at p. 385) which unduly curtails personal liberty.

The core of the bill is found in the three alternative categories of circumstances in which a person "without his consent"

" . . . may be taken into protective custody by a law enforcement officer and assisted, . . . to a public or private treatment facility, an emergency medical service customarily used by incapacitated persons or a police facility . . . "

to be further detained for as long as twelve hours if detention continues at a police facility or forty-eight hours if at an "approved public treatment facility."

These alternative classes of circumstances are that:

(1) a person "appears to be incapacitated by alcohol"—i. e. it appears that the use of alcohol has caused the person to be

"unconscious or . . . [to have] . . . judgment otherwise so impaired that . . . [the person] is incapable of realizing and making a rational decision with respect to his need for treatment" 22 M.R.S.A. § 1362 subd. 9;

or

(2) a person, "as the result of the use of alcohol, is disorderly"; or

(3) a person, "as the result of the use of alcohol, . . . is likely to cause or incur physical harm to himself or another, . . . .

The legitimate governmental interest conceived to justify the invasion of personal liberty is either (or both):

(1) a concern of government as "parens patriae" to provide protective care, or treatment, (or both) to persons emergently in need of it because alcohol has impaired the proper functioning of their bodies or faculties; or

(2) a "police power" interest to protect against the dangers to the public safety posed by persons so impaired.

As to the first category, (any person who "appears to be incapacitated by alcohol"), the class is drawn so broadly that it plainly encompasses situations, reasonably forseeable as frequently occurring, in which neither the "parens patriae" nor "police power" interest of government necessitates the governmental infringement of personal liberty purportedly authorized.

Since the class is not confined to incapacitation by alcohol which occurs in public, the "protective custody" procedures are subject to being invoked as to persons who are "incapacitated by alcohol" in their own homes or in other types of private surroundings and who, precisely for this reason that they are in private, may have no need that government intervene to provide for their care, temporary or otherwise. Here, then, the "parens patriae" rationale of justification is without relevance, and since a person's incapacitation by alcohol, without the presence of other factors, does not

*per se* threaten the safety of other persons, governmental police power concern to protect the public safety is also without legitimate bearing.[1]

The overbreadth arising from the failure to differentiate private from public situations also inheres in the second and third categories. Further, it is there compounded by the additional factor that the second and third categories rely upon indices of the impairment of bodily functions and faculties much less stringent than "incapacitation", these other criteria being: (1) "as the result of the use of alcohol, is disorderly" and (2) "as the result of the use of alcohol, . . . is likely to cause or incur physical harm to himself or another."

The standard, "as the result of the use of alcohol", by itself connotes impairments of bodily functions and faculties much less severe than the criterion, "incapacitated by alcohol" or being "intoxicated" (i. e.— "substantially impaired as the result of the use of alcohol" 22 M.R.S.A. § 1362, subd. 11). Thus, to the extent that the second and third categories include persons neither "incapacitated by" nor "substantially impaired as the result of the use of" alcohol, but under its influence only to a minor degree and who, therefore, can take care of themselves, "protective custody" is authorized in situations which can reasonably be expected to arise with frequency in which there is no compelling urgency for government to intervene by virtue of its "parens patriae" interest to provide protective care or treatment—temporarily or otherwise.

Furthermore, in such situations the "police power" interests of government, as

---

1. Because of such glaring overinclusiveness delineated by the concept "incapacitated by alcohol", we find it unnecessary to consider the additional, and serious, question whether once government has seen fit to invade the personal liberty of some of its citizens by assuming "parens patriae" responsibilities toward them, such particular means as are here utilized would qualify as a sufficiently substantial governmental effort toward reali-

zation of the "parens patriae" objectives involved to withstand the rigid scrutiny required by due process in relation to governmental restraints of personal liberty. As to this problem, cf: Shelton v. Tucker, 364 U. S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Donaldson v. O'Connor, 5 Cir., 493 F.2d 507 (1974); Lynch v. Baxley, D.C., 386 F.Supp. 378 (1974) (3–judge Court).

purportedly brought to bear in the instant bill by the factors: (1) "is disorderly" or (2) "is likely to cause or incur physical harm to himself or another", cannot, consistently with "due process of law", justify the "protective custody" procedures here permitted.

▮ Absent (1) full impairment of a person's ability to control or regulate his behavior (as would be signified by the concept "incapacitated by alcohol") or (2) such impairment to a substantial degree (as would be connoted by "intoxicated"), the fundamental premise of our legal system is that government may validly assert and maintain custodial control of an adult person's body (however temporarily), as a method of protecting the public safety, only within the framework of the State's penological interests—as concretely expressed in the criminal law's delineation of offenses against the State and as embodying constitutional safeguards for those subjected to criminal processes. See: Donaldson v. O'Connor, 5 Cir., 493 F.2d 507, 522 (1974).

Insofar, then, as the second and third categories encompass situations in which persons will be only mildly under the influence of alcohol, and therefore will be capable of caring for themselves, (1) the "parens patriae" interest of government is without legitimate bearing, and (2) a "police power" concern to protect the public safety may properly be invoked, consistently with constitutional due process, not by disavowal of, but only by reliance upon, the criminal law and criminal procedures and observance of the constitutional safeguards afforded to persons subjected to criminal processes.

Even if we assume, without affirming, that it can be consistent with constitutional "due process" that without invoking the criminal law and criminal proceedings, government may take temporary custodial control of the body of a person who, while able to care for himself, is yet sufficiently under the influence of alcohol to be potentially dangerous to others, the second and third categories violate "due process of law."

▮ As to a person thus impaired the compelling urgency mandated by "due process" to justify governmental infringement of personal liberty can exist only if such person has committed specific overt acts of a type having objective tendency to mark him as an immediate, substantial and continuing menace to the public safety. See: Lynch v. Baxley, D.C., 386 F.Supp. 378 (1974) (3-judge Court). In the present bill the standard that a person "is disorderly" or "is likely to cause or incur physical harm to himself or another" is, therefore, too broad to withstand the rigid scrutiny mandated by "due process" as to restraints of personal liberty since it would authorize the assertion of "protective custody" over a person merely because he is affected by alcohol to some degree, even if only mildly, and notwithstanding that he has failed to commit the kind of specific overt act which, objectively, would indicate him to be an immediate, substantial and continuing menace to the public safety.

Dated at Portland, Maine, this thirtieth day of April, 1975.

Respectfully submitted:

ARMAND A. DUFRESNE, JR.
RANDOLPH A. WEATHERBEE
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY