COMMONWEALTH *vs*. RICHARD G. O'CONNOR.

Middlesex. September 11, 1989. - November 20, 1989.

Present: LIACOS, C. J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Threshold police inquiry, Inevitable discovery. *Constitutional Law*, Search and seizure. *Protective Custody*.

Discussion of the circumstances under which this court would adopt the "inevitable discovery" exception to the exclusionary rule, under the standards expressed in *Nix* v. *Williams*, 467 U.S. 431 (1984), and under the requirements of art. 14 of the Massachusetts Declaration of Rights. [115-117]

Controlled substances discovered and unlawfully seized by a police officer on a public way during a pat-frisk of a person lawfully placed in protective custody under G. L. c. 111B, § 3, were properly admitted as evidence at a subsequent trial, in light of the judge's warranted findings that the police would inevitably have discovered the substances pursuant to a statutorily authorized and constitutionally permissible inventory search procedure. [117-119]

The judge hearing a motion to suppress evidence in a criminal case was warranted in concluding that a police officer had probable cause to place the defendant in protective custody under G. L. c. 111B, § 3. [119-120]

There was no merit to a criminal defendant's arguments that G. L. c. 111B, § 8 (authorizing police officers to take incapacitated persons into protective custody and to conduct an inventory search of their belongings), deprived him of his liberty without due process of law or was unconstitutionally overbroad or vague. [120-122]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on December 22, 1987.

On appeal to the jury session of the Lowell Division a pretrial motion to suppress evidence was heard by *Isaac J. Borenstein*, J., and the case was tried before him.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert E. Fox* for the defendant.

*Kurt N. Schwartz*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. During a pat-search for weapons, a Burlington police officer seized controlled substances from the defendant in what the Commonwealth concedes was a violation of the defendant's constitutional right to be free from unreasonable searches and seizures. When the police officer seized the drugs, he had already determined to "assist" the defendant to the Burlington police station pursuant to his authority under G. L. c. 111B, § 8 (1988 ed.), because, in his view, the defendant was a person incapacitated "by reason of the consumption of intoxicating liquor" who was "likely to suffer or cause physical harm or damage property" (G. L. c. 111B, § 3 [1988 ed.]). Section 8 of G. L. c. 111B provides that, if an incapacitated person is held in protective custody at a police station, "all valuables and all articles which may pose a danger to such person or to others may be taken from him for safekeeping" and inventoried. The Commonwealth argues that, because inevitably the drugs would have been found during a lawful inventory search of the defendant at the Burlington police station, the motion judge did not err in declining to suppress evidence of the controlled substances taken from the defendant.

The United States Supreme Court (*Nix* v. *Williams*, 467 U.S. 431 [1984]), each Federal Court of Appeals having jurisdiction over criminal matters (*id.* at 440 n.2), and substantially every State court that has considered the question (see Grossman, The Doctrine of Inevitable Discovery: A Plea for Reasonable Limitations, 92 Dick. L. Rev. 313, 313 n.1 [1988]) have recognized an inevitable discovery exception to the exclusionary rule. We conclude that, in the circumstances of this case, application of an inevitable discovery exception not only meets the standards expressed by the Supreme Court of the United States in *Nix* v. *Williams*, *supra*, but also satisfies the requirements of art. 14 of the Declaration of Rights of the Constitution of the Commonwealth. In reaching that conclusion we decide, contrary to the defend-

ant's contentions, that the police officer lawfully took the defendant into protective custody, that discovery of the drugs was inevitable, and that, because the Commonwealth gained no advantage from the premature seizure and because the evidence ultimately would have been discovered in circumstances not requiring the issuance of a search warrant, exclusion of the evidence is not required in order to fulfil the purposes of State and Federal exclusionary rules.

Officer Robert Healy of the Burlington police department testified during the hearing on the motion to suppress the evidence, and the motion judge made findings consistent with Healy's testimony. Healy said that about 9:40 P.M. on November 28, 1987, while on patrol, he was dispatched to Old Colony Road. On arrival he saw a red Chevrolet pickup truck on the side of the road "hung up on a wall." There were two people there. One had stopped to help get the truck off the wall. The other, the defendant, "seemed to be disoriented." His speech was "rambling and incoherent." He smelled of alcohol. Healy asked the defendant what had happened and received no reply. The ignition of the truck had been punched out, and there was no registration with the vehicle. The defendant said it was not his truck and that he had not been in it. The defendant was "not too steady on his feet" and was having trouble communicating with Healy. Healy concluded that the defendant was under the influence of intoxicating liquor. He decided to place the defendant in protective custody, and, following established police department procedures concerning protective custody, he placed handcuffs on the defendant and searched him for weapons. While searching the defendant, Healy saw a portion of a clear plastic bag protruding from the defendant's vest. He could feel that the bag did not contain a weapon. Healy removed the bag, saw several pills or capsules, and asked the defendant what they were. The defendant said he did not know. Following standard police practice, Healy took the defendant to the Burlington police station. There, also pursuant to standard practice, the belongings of a person taken into protective custody must be inventoried. The plastic bag that

Healy had seized contained two capsules and six white tablets that were later tested and determined to be controlled substances.

The motion judge, after making findings of fact, ruled that the defendant had been "incapacitated" within the meaning of the word in G. L. c. 111B, that the officer may have exceeded his authority in seizing the bag when he knew that it did not contain a weapon, that the officer was acting lawfully in placing the defendant in protective custody, and that the evidence would inevitably have been discovered during the inventory booking of the defendant at the police station. He denied the motion to suppress. Following the defendant's convictions, we granted his application for direct appellate review.

1. We conclude that the principles of deterrence underlying the exclusionary rule will not be undercut by the application of an inevitable discovery exception in the circumstances of this case. This court discussed the inevitable discovery exception in *Commonwealth* v. *Benoit*, 382 Mass. 210, 217-219 (1981), where we declined to apply it because to do so would have undercut the protective warrant requirement of the Fourth Amendment.[1] See *State* v. *Ault*, 150 Ariz. 459, 465-466 (1986) (State constitutional rule); *State* v. *Handtmann*, 437 N.W.2d 830, 832-838 (N.D. 1989) (such evidence excluded on Fourth Amendment grounds). Contra *United States* v. *Whitehorn*, 813 F.2d 646, 650 (4th Cir. 1987). We rejected the argument that an illegal warrantless search could be cured by proof that a search warrant, if sought, would have been issued and the evidence inevitably discovered. *Commonwealth* v. *Benoit, supra* at 219. We left open the question whether, in circumstances not requiring a warrant, we would adopt the inevitable discovery rule, which we viewed as an extension of the independent source rule of *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392 (1920), and principles stated in *Wong Sun* v. *United States*,

---

[1]That opinion, which preceded *Nix* v. *Williams*, appears to be concerned solely with arguments based on the Fourth Amendment to the Constitution of the United States.

371 U.S. 471, 487 (1963). *Commonwealth* v. *Benoit, supra* at 217.

In applying the inevitable discovery rule in *Nix* v. *Williams*, 467 U.S. 431 (1984), to a case involving a Sixth Amendment violation, the Supreme Court of the United States seems to have concluded that the inevitable discovery exception would apply without regard to the nature of the specific Federal constitutional violation. *Id.* at 442.[2] Under the rule accepted by the Supreme Court, the state of mind of the wrongdoing police officer is irrelevant. *Id.* at 445-446. The Federal rule simply is that, if no prejudice results from the improperly accelerated seizure and "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444. The Court thus rejected the "clear and convincing evidence" standard of proof there urged by the defendant (*id.* at 444 n.5) and favored by the two dissenting Justices, who otherwise agreed that the inevitable discovery exception was "consistent with the requirements of the Constitution." *Id.* at 459-460 (Brennan, J., dissenting).

Although the Supreme Court did not discuss the application of the inevitable discovery rule to primary evidence (such as the drugs in this case) rather than to secondary evidence (such as the victim's body in *Nix* v. *Williams*), the reasoning of the opinion in *Nix* v. *Williams* suggests that that Court would make no distinction between the two. *Id.* at 448.[3] In this case the fact that the evidence illegally seized

---

[2] We deal here only with a violation of art. 14 and leave any distinctions as to other constitutional violations to a later time.

[3] Courts have disagreed on whether the inevitable discovery exception should apply to primary evidence. See cases cited in Note, The Inevitable Discovery Exception, Primary Evidence, and the Emasculation of the Fourth Amendment, 55 Fordham L. Rev. 1221, 1228-1229 nn. 48 & 49 (1987). A recent plurality opinion of the Supreme Court of the United States states that the distinction between primary and indirect evidence has no support in that court's precedent and in the circumstances "would produce results bearing no relation to the policies of the exclusionary

was primary evidence of a crime does not make application of the inevitable discovery exception automatically inappropriate.

Our focus pursuant to art. 14 in determining the acceptability of an inevitable discovery exception to the exclusionary rule is on the nature of the "inevitability" that must be shown and on the character of the police wrongdoing. To the extent that the rule we announce under the State Constitution is more strict than the rule of *Nix* v. *Williams*, police will be held to the higher standard.

We accept the principle that the Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence. Rather than adopt the imprecisely defined "clear and convincing" standard of proof, we prefer to require a high level of specificity and detail in a judge's findings and analysis of the facts. See *Custody of a Minor (No. 1)*, 377 Mass. 876, 884-886 (1979). It would not be enough to say that the "inevitability" of discovery is established by proof that, more probably than not, the evidence would ultimately have been found by lawful means. Such a standard dilutes the meaning of the word "inevitable." Once the relevant facts are found by a preponderance of the evidence, the question is whether on those facts discovery by lawful means was certain as a practical matter.

In the case before us, the motion judge made careful findings. He found that the defendant was certainly going to be taken to the police station, once Officer Healy placed him in protective custody.[4] There, according to established police

rule." *Murray* v. *United States*, 487 U.S. 533, 541 (1988) (four-to-three decision). The dissent did not rely on any such distinction in arriving at its conclusion that evidence tainted by an illegal search should be suppressed. *Id.* at 551.

[4]It is true, as the defendant argues, that G. L. c. 111B, § 8, authorizes a police officer to assist an incapacitated person "to his residence, to a facility ['designed for the detoxification of intoxicated persons' (G. L. c. 111B, § 3)], or to a police station," and that only if such a person were taken to a police station would the drugs inevitably be found by lawful means. The test of inevitability should be made on the circumstances existing at the time of the unlawful seizure. At that time the officer had already decided

procedure and as authorized by statute, his possessions would have been searched and the contraband would have been found. One can conceive, of course, of a variety of unlikely events that might have interfered with the "inevitable" discovery, but the discovery was inevitable in every practical sense. See *Cook* v. *State*, 374 A.2d 264, 268 (Del. 1977) (inventory search of police station was routine procedure; discovery was inevitable); *Carlisle* v. *State*, 642 P.2d 596, 598 (Nev. 1982) (towed vehicle would have been searched and evidence would have been found).

We think the severity of the constitutional violation is critical in deciding whether to admit evidence that it is shown would inevitably have been discovered. Thus, we have declined to apply an inevitable discovery rule to justify admission of evidence seized in violation of the requirement that a search warrant be obtained, even if it was inevitable that, if sought, a search warrant would have been issued and the evidence would have been found. See *Commonwealth* v. *Benoit*, 382 Mass. 210 (1981). Bad faith of the police, shown by such activities as conducting an unlawful search in order to accelerate discovery of the evidence, will be relevant in assessing the severity of any constitutional violation. See 4 W. LaFave, Search and Seizure § 11.4(a), at 382 (2d ed. 1987).[5] There is no suggestion in this case that the police used the protective custody process as a device to obtain evidence of a crime. Although G. L. c. 111B was enacted to eliminate public intoxication as a crime and to provide detox-

---

to take the defendant into protective custody. Under the established procedure of the Burlington police department, his only option was to take the defendant to the station. Contrast *People* v. *Dandrea*, 736 P.2d 1211, 1212-1213 (Colo. 1987) (where person was taken into protective custody for transportation directly to alcohol detoxification facility, contraband would not inevitably have been discovered).

[5]"Because one purpose of the exclusionary rule is to deter [unconstitutional] shortcuts, the 'inevitable discovery' rule should be applied only when it is clear that 'the police officers have not acted in bad faith to accelerate the discovery' of the evidence in question," 4 W. LaFave, *supra*, quoting Note, Inevitable Discovery: The Hypothetical Independent Source Exception to the Exclusionary Rule, 5 Hofstra L. Rev. 137, 160 (1977).

ification centers to care for drunken persons taken into custody (Landsman, Massachusetts' Comprehensive Alcoholism Law — Its History and Future, 58 Mass. L.Q. 273, 274-275 [1973]), an incapacitated person should not be exonerated from the consequences of the lawful seizure of contraband during an inventory search conducted pursuant to lawful procedure authorized by G. L. c. 111B, § 8.

The constitutional violation in this case was not egregious. There was a warrantless seizure of a plastic bag, part of which was visible to a police officer who had taken a person into custody on a public way. The evidence would have been found within minutes of its seizure pursuant to a statutorily authorized and constitutionally proper inventory search procedure. If the officer had thought at all in advance about the lawfulness of the seizure of the plastic bag, he might have realized that he had nothing to gain and that he would be better advised to await the lawful inventory search. This is the view of the Supreme Court on the likely course of conduct of a police officer who knows that evidence he might seize inevitably will be discovered by lawful means. *Nix* v. *Williams, supra* at 446. Whether self-restraint of that type is likely in such a situation or whether, knowing that no harm can come to the Commonwealth from immediately seizing evidence that inevitably will be discovered, an officer will feel free to act without restraint, we do not know. We do say that premature discovery of evidence that would inevitably have been discovered by lawful means (without the need for a search warrant) does not render the evidence inadmissible, provided the Commonwealth's case is not aided (or the defendant's case harmed) by the unlawful, premature discovery of the evidence. That is the circumstance in this case, if the statute under which the police officer proceeded is constitutional and the police officer lawfully took the defendant into protective custody, questions to which we now turn.

2. We reject the defendant's argument that G. L. c. 111B, § 8, is unconstitutional in authorizing police officers to take into protective custody and search "incapacitated" persons who are "likely to suffer or cause physical harm or damage

property" (G. L. c. 111B, § 3). He argues that § 8 violates the prohibition against unreasonable searches and seizures of the Massachusetts (art. 14), and United States Constitutions (Fourth and Fourteenth Amendments). The defendant challenges the statute facially, contending that it authorizes an arrest without probable cause to believe that the defendant has committed or is committing a crime; that the application of § 8 denied him procedural and substantive due process of law; that the statute is overbroad in penalizing constitutionally protected expression; and that the statute is unconstitutionally vague. He further argues that his constitutional (and statutory) rights were violated by the police conduct in this case.

We accept the defendant's argument that, if his detention was unlawful, the evidence seized during Officer Healy's search should have been suppressed. The inevitable discovery exception requires that the hypothetical process by which the evidence would inevitably have been discovered be a lawful one. See *Nix* v. *Williams*, 467 U.S. 431, 444 (1984).

The motion judge was warranted in concluding that Officer Healy had probable cause to believe that the defendant, if left unprotected, would be likely to cause physical harm or damage property.[6] In such a situation, a police officer who fails to take a person into protective custody risks tort liability for his employer. See *Irwin* v. *Ware*, 392 Mass. 745, 746-747 (1984).[7] We turn then to the statutory process to deter-

---

[6]We need not decide whether any lesser standard would be acceptable under G. L. c. 111B, § 8, than probable cause to believe a person is incapacitated. See *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968) ("specific and articulable facts"). In *Commonwealth* v. *Tomeo*, 400 Mass. 23 (1987), where the defendant did not challenge the validity of G. L. c. 111B, § 8, we discussed the statute in terms of the officer's reasonable belief that the defendant was a risk to his own safety and the safety of others (*id.* at 24) and an officer's reasonable belief that his safety required that he search an incapacitated person (*id.* at 25).

[7]Although the act of placing the defendant in protective custody was a seizure in the constitutional sense, it was not an arrest. Certainly the Legislature did not intend to equate protective custody with an arrest. Section 8 explicitly disclaims such a result ("[a] person . . . held in protective custody . . . shall not be considered to have been arrested or to have been

mine whether, on issues open to the defendant, the statute is constitutionally infirm.

The defendant argues that his seizure under G. L. c. 111B, § 8, deprived him of his fundamental right of liberty without adequate procedural due process and without any compelling State interest to justify the denial of his fundamental liberty interest.[8] The argument lacks merit. The defendant was hardly in a condition to have a predetention hearing on his incapacity, and the State's interest in protecting the public and the defendant warranted the application of the statutory process. See *Youngberg* v. *Romeo*, 457 U.S. 307, 319-321 (1982); *Thompson* v. *Commonwealth*, 386 Mass. 811, 817 (1982); *Donahue* v. *Rhode Island Dep't of Mental Health, Retardation & Hosps.*, 632 F. Supp. 1456, 1461-1463 (D.R.I. 1986); *Suzuki* v. *Quisenberry*, 411 F. Supp. 1113, 1125-1126 (D. Haw. 1976); *Opinion of the Justices*, 339 A.2d 510, 519 (Me. 1975); *Hontz* v. *State*, 105 Wash. 2d 302, 307 (1986).

The defendant makes no significant First Amendment argument and thus may not assert the rights of others in arguing that the statute is overbroad. See *Commonwealth* v. *LaBella*, 364 Mass. 550, 553 (1974), quoting *Broadrick* v. *Oklahoma*, 413 U.S. 601, 610-615 (1973). Similarly, any claim of unconstitutional vagueness must be based solely on the circumstances of the defendant's case. See *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982); *Commonwealth* v. *Bohmer*, 374 Mass. 368, 371 n.6 (1978). Even if we were to test G. L. c. 111B, § 8, as if it were a criminal statute, its guidelines as applied to the facts of this case are not impermissibly vague. There is no prospect that the statutory language guiding the police could be imprecise as to a person in the defendant's condition or

---

charged with any crime"). Because there was probable cause to conclude the defendant was incapacitated, his seizure was not unreasonable, if the statute pursuant to which he was seized is constitutionally sound.

[8]This argument is made explicitly for the first time before us in the defendant's reply brief. It is made too late. We choose to deal with it nevertheless.

that in the circumstances those guidelines would encourage arbitrary enforcement of the law. See *Donahue* v. *Rhode Island Dep't of Mental Health, Retardation & Hosps., supra* at 1480; *Hontz* v. *State, supra* at 306-307.

*Judgments affirmed.*