Lu, John T., J.
INTRODUCTION
The defendant, Crystal Torres (Torres), moves to suppress Torres’s statements she allegedly made to the Gardner police after they stopped the car she was riding in on October 12, 2006.[1] The court has allowed the co-defendant, Alexis Rosado-Perez (Rosado-Perez), to join in the motion. Torres claims that police obtained the statements in violation of her state and federal constitutional rights, as she was not given her Miranda warnings before police questioning. Torres contends that due to this alleged violation the cocaine seized from her should be suppressed as the “fruit” of improper questioning. The Commonwealth argues suppression is not warranted as Torres’s statements were not the product of police questioning.
The Court finds that some of Torres’s statements were in response to custodial interrogation. Prior to giving Torres her Miranda warnings, Gardner police officer Christopher Starzynski (Starzynski) displayed drugs that he found in the car to Torres, told her that he thought they were drugs and asked her whose drugs they were. The response must be suppressed. Gardner police officer Roger Robert (Robert) asked Torres if she had put drugs in her pants. The response must also be suppressed. The court denies Torres’s motion to suppress her other statements. The court denies the motion to suppress physical evidence obtained from Torres because the inevitable discovery doctrine applies.
The court denies Rosado-Perez’s motion to suppress because Rosado-Perez lacks standing to seek suppression ofTorres’s statements or to seek suppression of the drugs as fruit of the poisonous tree based on the questioning of Torres in violation of Miranda, and, in any event, Rosado-Perez’s motion must fail when it is derivative of Torres’s motion to suppress, which the court has denied.
FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court finds the following facts.
1. On October 12, 2006, Gardner police officer Christopher Starzynski (Starzynski) was in full uniform and driving a marked police cruiser.
2. It was raining heavily, and it was windy and very cold.
*479 3. Shortly after 2 A.M., while in Gardner Center, he saw a brown Oldsmobile sedan which was headed east on Parker Street take a left turn onto Central Street.
4. That location was posted as no left turn allowed.
5. Star2ynski activated his emergency lights, and the car slowly pulled over and stopped on Central Street about 150 to 200 yards away.
6. Starzynski started to call in the location and plate number to his dispatcher.
7. Before he could finish, a passenger, Torres, got out and started running back toward his cruiser, saying that she was lost or needed directions.
8. Starzynski screamed at her to get back in her car, which she did.
9. Starzynski finished calling in the information to his dispatcher.
10. Starzynski got out of his cruiser and another police car arrived.
11. Starzynski went to the driver’s side of the Oldsmobile and spoke to the driver, Rosado-Perez.
12. Torres interrupted the conversation between Rosado-Perez and Starzynski to tell Starzynski that his name was “Peter,” and not “Alexis Rosado-Perez.”
14. Rosado-Perez was unable to provide identification.
15. Starzynski wrote down his name and date of birth.
16. Rosado-Perez would not make eye contact with Starzynski and he could not stop his hands from shaking.
17. Starzynski asked Rosado-Perez if he had a driver’s license in Massachusetts or another state.
18. Rosado-Perez said that he did not and Starzynski asked him to step out of the car.
19. Starzynski patted him down, patting his outer clothes to see if he had any hard objects on him.
20. Starzynski again asked him if he had a driver’s license in any state or country. Rosado-Perez said, “No,” which Starzynski’s dispatcher confirmed.
21. Starzynski handcuffed him and put him in a police cruiser.
22. Starzynski’s dispatcher reported that the car was registered to Ida Nunez of Leominster but that the registration was canceled or revoked due to lack of insurance.
23. Starzynski asked Torres if she was licensed to drive in Massachusetts or any state and she said that she was not.
24. She also stated that she did not have any identification.
25. She provided what proved to be an accurate name and date of birth.
26. Starzynski asked her to step out of the car and to step over to Robert.
27. Starzynski had her sit in the rear seat area of Robert’s police car because the heater was on and it was more comfortable than standing in the rain.
28. From where Torres was seated, it was impossible to open the door to get out.
29. Starzynski conducted what he believed was an inventory search of the car pursuant to a Gardner police inventory search policy titled, “GARDNER POLICE DEPARTMENT POLICY & PROCEDURE NO. 640, MOTOR VEHICLE INVENTORY SEARCHES.” (Exhibit #1)[2]
30. As Starzynski was searching the car, Robert told him that Torres was moving back and forth, had her shirt up and was playing with the waist band on her pants.
31. In front of the rear seat of the defendants’ car on the floor next to the middle console, just behind the driver’s seat, Starzynski found a small baggie containing a white rock substance.
32. Starzynski was an experienced drug investigator.
33. He thought that the white rock substance was cocaine.
34. From the beginning of the search until discovery of the white rock substance three to four minutes passed.
35. Starzynski walked back to the police car, opened the door and, while holding the plastic bag, told Torres he thought the substance was cocaine.
36. Torres got very upset.
37. Torres denied knowledge of the drug.
38. Starzynski asked several times whose drugs they were.
39. She said that she did not use drugs and did not know about the drugs.
40. Starzynski told her she was under arrest and handcuffed her behind her back.
41. As she was being put back in the cruiser, Torres said that Rosado-Perez had more drugs on him.
42. The period of time from Starzynski’s initial display of the drugs to Torres’s statement about Rosado-Perez was about thirty seconds.
43. Starzynski radioed the Gardner police station to tell them to do a complete search on Rosado-Perez who was either at the station or on his way there.
44. Robert waited for a tow truck to arrive while Torres remained in the back of his cruiser.
45. Torres told Robert she wanted to speak with him. She was still upset and made another reference to the drugs and talked about her children.
46. Robert asked, “Did you put it down your pants?”
*480 47. Torres said that when the blue lights went on, the driver threw a package in her lap, she panicked and put it in her pants.
48. She said she had kids and did not want to be • charged with it.
49. Robert told her that they would figure it out when they got back to the station and could speak to their Sergeant.
50. Up to this point, police had not advised Torres of her Miranda rights.
51. Robert transported Torres to the station.
52. Starzynski had already arrived at the station and was present when Rosado-Perez and Torres were booked.
53. Another officer told Starzynski that Torres had more drugs in her groin area.
DISCUSSION
Introduction
Torres moves to suppress her statements claiming that police improperly questioned her without administering Miranda warnings and therefore the cocaine seized from her was the “fruit” of improper police conduct. The Commonwealth contends that there was no improper police questioning and that Torres made unsolicited incriminating statements. The Commonwealth also claims that, even if the statements were taken in violation of Miranda, the cocaine taken from Torres’s person should not be suppressed because police would have discovered this evidence lawfully when Torres arrived at the police station and was subject to an inventoiy search.
Miranda and the Exclusionary Rule
Miranda warnings must precede statements elicited as a result of custodial interrogations but are not required before “volunteered statements of any kind.” Miranda v. Arizona, 384 U.S. 436, 478 (1966). Before police conduct a “custodial interrogation,” an individual must be advised of his Miranda rights and waive those rights. Id. at 444. The defendant bears the burden of establishing that a contested statement is the product of custodial interrogation. Commonwealth v. Larkin, 429 Mass. 426, 432 (1999).
“Custodial interrogation” means “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Miranda, 384 U.S. at 444. Interrogation for Miranda purposes is defined as “express questioning or its functional equivalent.” Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The term “functional equivalent” includes any words or actions by the police that they should know are “reasonably likely to elicit an incriminating response from the suspect.” Commonwealth v. Rubio, 27 Mass.App.Ct. 506, 512 (1989), quoting Innis, 446 U.S. at 301.
“[An] ‘incriminating response’ . . . [is] any response — whether inculpatory or exculpatory — that the prosecution may seek to introduce at trial.” Innis, 446 U.S. at 301 n.5. Itmakes no difference that police have a legitimate, subjective motive that is unrelated to obtaining an incriminating response because the ultimate test is objective, i.e., how would the reasonable person in custody perceive the questions or statements by the police. See Commonwealth v. Torres, 424 Mass. 792, 796-97 (1997), citing United States v. Taylor, 985 F.2d 3, 7 (1st Cir. 1993), cert denied, 508 U.S. 944.
Starzynski’s deliberate act of approaching Torres, showing the drugs recovered from the car where she was a passenger and stating that in his opinion, the bag contains cocaine, was confrontational and constituted an interrogation. On similar facts the Appeals Court in Commonwealth v. Rubio held that the display of drugs to a suspect under arrest at the scene was the equivalent of custodial interrogation because showing the drugs to the defendant was “clearly confrontational and had the force of an implicit question: ‘Is this yours?’ ” 27 Mass.App.Ct. 506, 513 (1989).
In contrast, in Commonwealth v. Mitchel, the officer’s statement to the defendant in custody was not an interrogation where the officer’s statement that it was too bad getting locked up so close to Christmas elicited a response, “I was just trying to make some money for Christmas. I got no job.” 47 Mass.App.Ct 178 (1999). In Mitchel, the Appeals Court held that the officer’s statement “was an ‘observation’ [not a question] because it was not specifically directed at the defendant, and would have been interpreted by a reasonable person in [the] situation as a mere comment upon the defendant’s unfortunate circumstance, not calling for any response, let alone an inculpatory one.” Id. at 181. Unlike the police officer’s “observation” in Mitchel here, Starzynski’s statement was specifically directed at Torres since Starzynski deliberately approached the defendant who was seated in the police cruiser, opened the door, showed the drugs and said that the bag contained cocaine. Starzynski’s statement elicited an incriminating statement from Torres. For the purposes of custodial interrogation analysis, Torres’s response that she did not use drugs and that she did not know about the drugs constitutes an “incriminating response” because it is an inculpa-tory statement that can be used at trial to prove guilt. Innis, 446 U. S. at 301; Rubio, 27 Mass.App.Ct. at 513.[3]
The last issue in deciding whether the defendant was subjected to custodial interrogation at the time of Starzynski’s statement and questions is to determine whether Torres was in police custody or whether her freedom of action was deprived in any significant way. There are four factors that the Court must consider in making the determination of whether the individual’s freedom of action has been sufficiently limited so as *481 to require Miranda warnings. Commonwealth v. Bryant, 390 Mass. 729, 737 (1984):
(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant’s arrest.

Id.

“There is no specific formula for weighing the relevant factors (citation omitted) . . . but ‘[r]arely is any single factor conclusive.’ Commonwealth v. Bryant, 390 Mass. 729, 737 (1985).” Sneed at 220. “ [DJetermining whether an interrogation is custodial for the purposes of Miranda is not always as easy as meets the eye.” J.A. Grasso & C.M. McEvoy, Suppression Matters Under Massachusetts Law §18-3[b], 18-17 (2006). In Commonwealth v. Damiano, 422 Mass. 10, 13 (1996), the “defendant was handcuffed in the back seat of a police cruiser in the middle of the night on a multi-lane State highway. As a matter of law no reasonable person in that situation would believe that he or she was free to leave.” Commonwealth v. Jones, 42 Mass.App.Ct. 378, 382-83 (1997) (interrogation was custodial when defendant was not handcuffed but locked in back of police car and told not to leave and was confronted by his accusers during questioning, and questioning terminated with the defendant’s arrest).
As to the first Bryant factor, Starzynski spoke to Torres while she was seated in the police cruiser in which she had no ability to open the door and leave. As to the second factor, once Starzynski found the baggie with a white rock-like substance, the investigation was focused on Torres. When Starzynski approached the defendant, Starzynski had probable cause to arrest Torres; the second factor favors a finding of custody. The third factor is neutral, that Torres was locked in the police cruiser when Starzynski spoke to her, was arguably coercive, but the questioning was brief and relatively non-confrontational. The fourth factor favors a finding of custody. Torres was arrested right after she made the incriminating statement and could not leave.
In Commonwealth v. Gordon, 47 Mass.App.Ct. 825 (1999), the court held that a defendant who had been chased, forcibly restrained, handcuffed, and putin the back seat of a police vehicle was in custody. Even though the restraint was reasonable pursuant to a Terry stop, “the combined indicia of handcuffs and restraint in the back of a police cruiser attain the level of custody associated with formal arrest” under the reasonable person test required by Miranda. Gordon, 47 Mass.App.Ct. at 827. Torres was in police custody at the time of interrogation. Because the interrogation was not preceded by Miranda warnings, Torres’s statement that she did not use drugs and did not know about the drugs must be suppressed.
When Torres said there were “more drugs” and spoke about her children, and Robert responded by asking if she “put it down her pants,” Robert’s words constituted a custodial interrogation. Torres was under arrest and in police custody. Robert’s question constituted words spoken by police that the police should have known were “reasonably likely to elicit an incriminating response from the suspect,” and did elicit an incriminating response. Rubio, 27 Mass.App.Ct. at 512, quoting Innis, 446 U.S. at 301.
As a result of the violations, Torres’s statements, made before Miranda warnings were administered, (1) denying knowledge of the drugs, that she did not use drugs, and did not know about the drugs; (2) that Rosado-Perez had more drugs on him; (3) that when the blue lights went on Rosado-Perez threw the package in her lap; (4) that she panicked and put the cocaine in her pants; and (5) that she had kids and did not want to be charged with it, must be suppressed.
Fruit of the Poisonous Tree and Inevitable Discovery
The next inquiry is whether the drugs obtained from Torres’s person must also be suppressed as the fruit of Robert’s unlawful questioning. See Wong Sun v. United States, 371 U.S. 471, 488 (1963). The Commonwealth argues that exclusion of the drugs obtained from Torres’s person is not warranted because police would have lawfully discovered the drugs at the police station when, because of and after her arrest, Torres would have been subject to an inventory search.
“Under the ‘inevitable discovery’ rule, evidence that is the fruit of the poisonous tree is not rendered inadmissible if the government can demonstrate that it would have inevitably discovered the evidence lawfully.” Commonwealth v. Benoit, 382 Mass. 210, 217 (1981). The courts conduct a two-step analysis. Commonwealth v. Perrot, 407 Mass. 539, 546 (1990). First, the Commonwealth must prove by a preponderance of the evidence “that discovery by lawful means was ‘certain as a practical matter.’ ” Id. at 547 (internal citations omitted). Second, the court must consider the severity of the constitutional violation by the police. Commonwealth v. O’Connor, 406 Mass. 112, 118 (1989). This is a demanding test. The inevitability must be such that discovery of the information was “virtually certain” as a practical matter. Perrot, 407 Mass. at 548; O’Connor, 406 Mass. at 117. This determination is to be made by examination of the circumstances that existed at the time of the unlawful conduct. See id.
*482 Even if the evidence was unlawfully seized by police, the evidence may still be admissible if (1) police lawfully placed the defendant into police custody, (2) the discovery of the evidence was inevitable during the booking procedures and/or the search of the defendant’s person incident to a lawful arrest, and (3) the constitutional violation was not egregious. O’Connor, 406 Mass. at 117-18; see also Commonwealth v. Lites, 67 Mass.App.Ct. 815, 821 (2006).
In O’Connor, a police officer took an intoxicated defendant into protective custody. 406 Mass. at 114. The officer conducted a pat-down search for weapons while the defendant was standing on the side of the road. Id. While searching the defendant, the officer saw part of a plastic bag protruding from the defendant’s vest. Id. The officer admitted that he could feel that the bag did not contain a weapon, but he removed it anyway. Id. The motion judge denied the motion to suppress and held that the evidence would inevitably have been discovered during the inventory search while booking the defendant at the police station. Id. at 115. The Supreme Judicial Court affirmed.
In Lites, the defendant was a passenger in a stopped car. 67 Mass.App.Ct. at 817. Upon smelling burnt marijuana and observing suspicious movements, police handcuffed the defendant. Id. Without administering Miranda rights, and without first pat-frisking him, police asked the defendant if he had any guns or drugs on him. The defendant admitted that he had marijuana. Id. at 818. The trial judge denied his motion to suppress the physical evidence, holding that the initial arrest was based on probable cause and that the subsequent inventory search at the police station would have inevitably led to the discovery of the marijuana. Id. at 816. The Appeals Court affirmed the denial of the suppression motion. Id. at 821.
This case mirrors the circumstances present in O’Connor and Lites. Police did not engage in deliberate bad faith misconduct or commit an egregious constitutional violation. Although seizure of the cocaine was based on statements taken in violation of Miranda, suppression is not required.
Rosado-Perez’s Motion to Suppress
The Amendola possessory standing rule has not been extended to the situation presented here, in which Rosado-Perez seeks suppression, as fruit of the poisonous tree, of drugs recovered on Torres because of a Miranda violation as to Torres. Commonwealth v. Amendola, 406 Mass. 592, 601 (1990). The adoption of automatic possessory standing was largely based on fears that defendants would be deterred from alleging constitutional violations because they would have to admit to possession of the contraband in order to bring a motion to suppress illegally seized items (and prosecutors would take similarly contradictory positions), hardly a concern in this case involving a Miranda violation. Amendola at 598-99. In any event, Rosado-Perez’s motion must fail just as Torres’s motion has.
ORDER
The defendant Crystal Torres’s motion to suppress statements and physical evidence is allowed in part and denied in part. The motion is ALLOWED as to Torres’s statements (1) denying knowledge of the drugs, that she did not use drugs, and did not know about the drugs; (2) that Rosado-Perez had more drugs on him; (3) that when the blue lights went on Rosado-Perez threw the package in her lap; (4) that she panicked and put the cocaine in her pants; and (5) that she had kids and did not want to be charged with it. Otherwise, the motion to suppress statements is DENIED. The motion to suppress physical evidence as fruit of the poisonous tree is DENIED.
The defendant Alex Rosado-Perez’s motion to suppress is DENIED.

The court has allowed co-defendant Rosado-Perez’s motion to join Torres’s motion to suppress.

Exhibit #1 also includes “POLICY & PROCEDURE NO. 660, BOOKING PROCEDURES AND THE HOLDING FACILITY,” along with a “GARDNER POLICE DEPARTMENT TOW AND INVENTORY FORM” for the search of the car.

The court understands that Torres may wish to admit her minimally incriminating statements into evidence at trial, but nevertheless rules on this issue so that all possible suppression issues are resolved prior to trial. No view is expressed on the admissibility of the statements apart from the Miranda issues raised in Torres’s motion to suppress.