COMMONWEALTH vs. JOHN FERGUSON.

Suffolk. January 7, 1991. - July 10, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Threshold police inquiry, Inevitable discovery, Plain view. *Threshold Police Inquiry. Constitutional Law,* Search and seizure.

Where it appeared in a narcotics case that a police officer had obtained possession of the defendant's jacket when it came off in the officer's hands as he pursued the defendant in response to information received on patrol that a man had pointed a gun at a woman; that the officer had frisked the jacket after noticing it was unusually heavy and after observing a black plastic bag protruding from the pocket; that the officer saw the narcotics for the first time only after he removed the bag from the jacket knowing that he had a bag and not a gun, and that the defendant was neither in custody at the time of the search nor was custody inevitable, the defendant was entitled to suppression of the narcotics that had been seized from the his jacket pocket and subsequent statements by him to the officer to the effect that the officer just "busted [his] business." [614-616] NOLAN, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on December 8, 1988.

A pretrial motion to suppress evidence was heard by *James P. Donohue,* J., and the case was heard by *Guy Volterra,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Susan Underwood,* Assistant District Attorney (*Frank Santisi,* Assistant District Attorney, with her) for the Commonwealth.

O'CONNOR, J. Following a jury-waived trial, the defendant was convicted of trafficking in cocaine. This is an appeal from that conviction. The issue raised by the appeal is whether reversible error occurred when a judge denied the defendant's pretrial motion to suppress (1) cocaine that had been seized from the defendant's jacket pocket and (2) statements that the defendant made when he was arrested. The Appeals Court affirmed the denial of the motion in an unpublished memorandum pursuant to Appeals Court Rule 1:28. *Commonwealth* v. *Ferguson*, 29 Mass. App. Ct. 1103 (1990). We granted the defendant's application for further appellate review, and we now reverse the defendant's conviction and remand this case to the Superior Court for a new trial.

The only witness at the suppression hearing was Boston police officer Carlos Lara. He testified substantially as follows. As he and another officer were patrolling in a cruiser, an unidentified woman flagged down the cruiser and told the officers that a black man in his thirties, who had a beard and a mustache and was wearing a black and blue sweater and a blue jacket, had pointed a gun at her. The woman pointed out the direction in which the man had gone, and the officers drove off in that direction. Within a minute, about two blocks away, the officers saw the defendant and he matched the description given by the woman. Lara asked the defendant to come to the cruiser, but the defendant fled. Lara pursued the defendant on foot across several yards. As the defendant was jumping over a fence, Lara "grabbed his jacket." The defendant "ran out of his jacket," and kept running. The officer kept the jacket.

Lara testified that, when the jacket came off in his hands, he noticed that it was heavy. The following questions were asked by defense counsel and answers given:

DEFENSE ATTORNEY: "And so when you felt something heavy in this jacket which you had seized, you first off thought that it was a weapon, is that right?"

THE WITNESS: "Yes, I thought it was something heavy, right."

DEFENSE ATTORNEY: "And so you patted down the outside of the jacket, is that right?"

THE WITNESS: "Right. And then I saw —"

DEFENSE ATTORNEY: "And then you — then you—"

THE WITNESS: "—that the pocket was up and I saw the plastic coming out of the pocket."

DEFENSE ATTORNEY: "All right. So you could see plastic sticking out from the outside of the pocket?"

THE WITNESS: "Yes, (inaudible)."

DEFENSE ATTORNEY: "All right. So at that point you knew you had a bag and not a gun, is that right?"

THE WITNESS: "That's correct." Lara also testified that the bag was a "black plastic bag."

According to Officer Lara's testimony, after he saw the plastic "sticking out from the outside of the pocket" and he knew he "had a bag and not a gun," he then put his hand into the pocket and took out the bag which contained a white powder which was the cocaine sought to be suppressed. The officer then resumed the chase and, with his gun drawn and "the cocaine in [his] hand," caught up with the defendant who said, "You've got me. You've got me. You just busted my business." The officer then arrested the defendant for possession of cocaine. No gun connected with the defendant was ever found.

In explanation of his denial of the motion to suppress, the judge reported his findings and rulings in a written memorandum. The judge's findings concerning the events leading up to the defendant's having left his jacket in Lara's grasp tracked Lara's testimony. Then, however, the judge found as follows: "Lara noticed that the jacket was unusually heavy and he observed a plastic bag containing a white powdery substance protruding from the pocket. The bag contained 342 grams of cocaine." In addition, contained in a section of the memorandum entitled "Rulings of Law," the judge stated: "While trying to stop the defendant Lara grabbed his jacket. Lara noticed immediately that the jacket was unusually heavy and that there was a large bag of a white substance protruding from the pocket." The judge made no

other findings with respect to Officer Lara's discovery of cocaine in the defendant's jacket.

The judge concluded that the seizure of the cocaine was lawful. He also concluded that the remarks the defendant made should not be suppressed because they were voluntarily and spontaneously made and were not in response to police interrogation.

Based on the information he had received from the woman while he was on patrol, Officer Lara's attempt to conduct a threshold inquiry of the defendant and his related pursuit of the defendant leading up to his obtaining possession of the jacket and frisking it for a gun were lawful. See *Terry* v. *Ohio*, 392 U.S. 1, 20-27 (1968). The defendant does not suggest otherwise. Furthermore, if Lara saw the white substance, which turned out to be cocaine, in plain view during the course of his lawful patting down of the jacket for a gun, the defendant would not have been entitled to suppression of the cocaine. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 464-473 (1971). *Commonwealth* v. *Sergienko,* 399 Mass. 291, 293 (1987). The defendant's position, however, is that the Commonwealth, on whom the burden of proof to justify the warrantless seizure of the cocaine rests, see *Commonwealth* v. *Franklin,* 376 Mass. 885, 898 (1978); *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974), has failed to show either that the cocaine was in plain view or that Officer Lara discovered it while he was lawfully patting down the jacket for a gun. On the contrary, the defendant argues, the only relevant finding that would have been warranted by the evidence at the suppression hearing was that Lara saw the cocaine for the first time after he removed the black plastic bag from the jacket which happened only after he saw the plastic "coming out of the pocket" and knew that he had a bag and not a gun. Once Lara knew that he had a bag and not a gun, the defendant says, the justification for Lara's intrusion into the jacket had come to an end, and any discovery of a pocket's contents thereafter constituted a warrantless search lacking probable cause and exigent circumstances in violation of the defendant's rights under the Fourth and Four-

teenth Amendments to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution.

We agree with the defendant's contentions. We are not sure from the judge's memorandum whether he found that Officer Lara observed not only the plastic bag but also its contents before he knew that the jacket did not contain a gun, but such a finding would have been unwarranted. For all that appears in the record, the justification for the intrusion leading to the discovery of the cocaine had ended before the discovery was made, and therefore the Commonwealth is not aided by the plain view doctrine articulated in *Coolidge* v. *New Hampshire, supra.* The result is that the Commonwealth has failed to sustain its burden of proving the lawfulness of the warrantless search that yielded the cocaine and the cocaine should have been suppressed. Nothing in *Commonwealth* v. *Anderson*, 366 Mass. 394 (1974), which is relied on by the Commonwealth, suggests a different result. The drugs discovered in that case were discovered during the course of a justified intrusion. Furthermore, the Commonwealth's argument, expressed orally but not in its brief, that the jacket was not searched in the constitutional sense because it had been abandoned by the defendant, is unpersuasive. Abandonment occurs only when, unlike here, a defendant has "voluntarily given up all control over the [property]." *Commonwealth* v. *Battle*, 365 Mass. 472, 475 (1974).

In his dissenting opinion, Justice Nolan calls our attention to *Commonwealth* v. *O'Connor*, 406 Mass. 112 (1989), in which we concluded that, "in the circumstances of [that] case," application of an inevitable discovery exception to the exclusionary rule met the requirements of the Federal and Massachusetts Constitutions. Although the Commonwealth has not argued the point, Justice Nolan concludes that "the inevitable discovery exception is more compelling in this case" than it was in *O'Connor*. *Post* at 617. In *O'Connor*, the unlawful search occurred *after* the defendant was taken into custody in circumstances in which an inventory search, that is, a search not requiring a warrant based on probable cause,

was certain to follow. The circumstances in the present case are critically different. Here, the officer searched the defendant's jacket during an interruption in the officer's pursuit of the fleeing defendant (the officer did not "pull[ ] the protruding plastic bag out of the defendant's jacket pocket while chasing him" as Justice Nolan would have it. *Post* at 617.) The defendant was neither in custody at the time of the search nor was custody inevitable. Therefore, even if the Boston police department had an appropriate written inventory search policy in effect, as required by *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988), which has not been established, discovery of cocaine pursuant to an inventory search of the defendant's jacket would not have been inevitable at the time of the unlawful search. The Commonwealth's exclusionary rule applies.

We turn briefly to the question whether the defendant was also entitled to suppression of his statements to Lara to the effect that Lara just "busted [his] business." The defendant says that, even though the statements were not the product of interrogation, they were nevertheless the fruit of the prior unlawful search. The Commonwealth's only reply is that "[s]ince the search and seizure of the cocaine in the defendant's jacket was lawful, the defendant's later statements . . . were not infected by any illegality." We have rejected the premise on which the Commonwealth's position depends, and therefore we reject the Commonwealth's position as well.

We reverse the conviction. We recognize that without the cocaine and statements, which we have concluded must be suppressed, the Commonwealth may not have a triable case. However, that judgment is not ours to make, and therefore we remand this case to the Superior Court for a new trial.

*So ordered.*


NOLAN, J. (dissenting). Just two years ago, in *Commonwealth* v. *O'Connor*, 406 Mass. 112 (1989), this court ruled (on facts frighteningly similar to the ones we now face) that

the evidence found would be admitted under the doctrine of inevitable discovery. In that case, a police officer had decided to take the intoxicated defendant into "protective custody." The officer conducted a pat-down search for weapons while the defendant was standing on the side of the road. While searching the defendant, the officer "saw a portion of a clear plastic bag protruding from the defendant's vest." As in our case, the officer in *O'Connor* admitted that he could feel that the bag did not contain a weapon. Nevertheless, the officer removed the bag, which contained contraband.

In *O'Connor*, we determined that the evidence would inevitably have been discovered during the inventory search while booking the defendant at the police station. *Id.* at 115. We ruled that the principles of deterrence underlying the exclusionary rule would not be undercut by the application of an inevitable discovery exception in the circumstances of that case. *Id.* We concluded that the officer in *O'Connor* did not act in bad faith. *Id.* at 118. Indeed, we determined that if the officer had given any thought to the lawfulness of the search, he would have determined that it would be better to await the lawful inventory search.

In the case before us, the constitutional violation is even *less* serious. The officer pulled the protruding plastic bag out of the defendant's jacket pocket while chasing him. Certainly even less thought went into the lawfulness of the search than in *O'Connor*. Thus, the inevitable discovery exception is more compelling in this case. I would remand the case for a specific finding as to whether the defendant would have been taken into custody for assault and battery with a dangerous weapon. An inventory search of the jacket during booking would likewise have turned up the contraband.

We stated in *O'Connor* that, under the facts of that case, the inevitable discovery doctrine met the standards of both the State and Federal Constitutions. *Id.* at 113. Today we face a case with similar facts. I am unaware of any amendment to either art. 14 of the Massachusetts Declaration of Rights or the Fourth Amendment to the United States Constitution in the last two years. Accordingly, I dissent.