COMMONWEALTH *vs.* CARLOS VAZQUEZ.[1]

Suffolk. October 7, 1997. - November 7, 1997.

Present: LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Threshold Police Inquiry. Arrest. Search and Seizure,* Arrest, Automobile, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause.*

In the circumstances of a police officer's lawful stop of a motor vehicle in a public place on probable cause to believe that a crime had been committed and that the vehicle contained a gun, the officer, in the interests of his and the public's safety, properly ordered the occupants to leave the vehicle and properly conducted a limited search for the weapon. [101-104]

COMPLAINT received and sworn to in the Salem Division of the District Court Department on March 14, 1994.

A pretrial motion to suppress evidence was heard by *Daniel Klubock,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

*Jerry B. Wittenberg* for the defendant.

MARSHALL, J. The Commonwealth appeals from an order of a judge sitting in the Salem Division of the District Court Department allowing the defendant's motion to suppress evidence, a handgun allegedly used by the defendant in an assault. A police officer had searched a vehicle, found the gun, and seized it. The judge ruled that there was no probable cause for the vehicle search.

A single justice of this court allowed the Commonwealth's request for an interlocutory appeal and ordered that the appeal be entered in this court. We conclude that the officer lawfully

---

[1]As is our custom, we spell the defendant's name as it appears on the complaint.

searched the vehicle and seized the gun both because there was probable cause to do so and because he could conduct a limited search for his own protection and that of others. We vacate the order allowing the defendant's motion to suppress, and direct that an order denying that motion be entered in the District Court.

1. On March 14, 1994, the Salem District Court issued a criminal complaint against Carlos Vazquez alleging two counts: carrying a firearm without a license in violation of G. L. c. 269, § 10 (*a*), and assault by means of a dangerous weapon, in violation of G. L. c. 265, § 15B. The charges stem from an incident that occurred on March 13, 1994. At about 5:25 P.M., a Salem police officer was driving down a street in the course of his assigned duties when he observed a number of people on the street. As he drove, several people told him that an Hispanic man in a brown jacket had been chasing another man down the street with a gun. At least two people pointed to Vazquez as the alleged assailant; he was standing next to a Mazda automobile, on the passenger's side.

The officer pulled up behind the Mazda, left his vehicle and motioned to Vazquez to approach him. The officer frisked him, but located no weapon. During the frisk, the Mazda pulled away. The officer put Vazquez in his cruiser and pursued the Mazda. After a short distance, the Mazda turned into a gasoline station, followed by the officer. Two women occupied the front seats, with two young children in the back seat.

The officer approached the driver and told the women to put their hands on the dashboard. The women complied. He asked each in turn, whether they knew Vazquez. Both denied knowing him. Both women said they had not seen Vazquez put anything in the car, although they acknowledged that he had been at the passenger window before they left. The officer ordered the passenger to step out of the car. The officer then looked under her seat and found a handgun. The passenger was arrested. When a check of the driver's license and registration revealed an outstanding warrant for her arrest, the driver also was placed in custody. On the discovery of the gun, Vazquez said that the gun was his. Both occupants of the automobile were subsequently charged with carrying a firearm without a license.

On September 28 and 29, 1994, a hearing was held on a motion filed by the driver and passenger to suppress the gun seized from the Mazda. The judge allowed the motion and issued a

memorandum with detailed findings of fact. On July 11, 1995, Vazquez filed his own motion to suppress the gun. The judge, without a hearing, allowed that motion, incorporating in his memorandum the findings of fact from his earlier order in the case of the two women defendants.[2] He proceeded to address the sole additional question before him, whether Vazquez had standing to contest the seizure of the gun. On ruling that Vazquez did have standing, the judge allowed his motion to suppress the gun.

2. The Commonwealth argues that Vazquez did not have standing to contest the seizure of the gun, and that in any event the motion judge erred in his determination that the officer's search of the Mazda was unlawful. Because we decide that the search was lawful, we do not address the issue of standing.

The judge asked first whether the officer had a right to stop and detain the two women codefendants, justified by a reasonable suspicion of the commission of a crime by them. *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993). The judge determined that the officer had information from multiple witnesses that a man had been brandishing a gun and chasing a person down the street, that two or three of those witnesses pointed out Vazquez as the armed assailant, that the officer was entitled to rely in the circumstances on the information from the bystander witnesses,[3] and that the officer therefore had a right to

[2]Prior to the judge's order on Vazquez's motion to suppress, Vazquez filed a motion to adopt the findings on the motion to suppress evidence of the two women. In that motion, Vazquez's counsel stated that he had not been notified of the hearing on the women codefendants' motion to suppress, nor was he made aware that the codefendants' cases had been severed from his; otherwise, he said, he would have joined the codefendants' motion to suppress. Because Vazquez's attorney did not participate in that hearing and the judge made his initial findings of fact as to the women codefendants only, the findings as subsequently incorporated into the judge's order on Vazquez's motion to suppress lack some specificity as applied to Vazquez.

[3]Before concluding that the officer had reliable information to suspect commission of a crime, the judge reviewed elements of possible unreliability. The judge stated that "there is some question about whether Vazquez might not have been entitled to carry a gun," citing *Commonwealth* v. *Couture*, 407 Mass. 178 (1990), that carrying a handgun, in and of itself, does not furnish probable cause to believe that the individual is illegally carrying that gun, nor even give reasonable suspicion justifying a *Terry* stop (*Terry* v. *Ohio*, 392 U.S. 1 [1968]). See *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983). We agree. Vazquez's alleged crime, however, was not only illegal possession of a firearm, but also armed assault. Whether Vazquez had a firearm license or not, the alleged assault would have been criminal. What the officer assumed,

stop and frisk Vazquez.[4] Finding no gun when he searched Vazquez, the judge determined that the officer could infer that Vazquez had dropped the gun in the Mazda, because he was standing by the passenger window.

The judge concluded that this chain of facts and inferences supported the officer's right to stop and detain the women. Following on that, the officer was entitled, the judge ruled, to inquire whether the women knew Vazquez and whether he had given them a gun or dropped one into the car. The judge further ruled that the officer had, in the circumstances, a right to protect himself and order the women to place their hands on the dashboard. The judge found the officer's actions proper until this moment in the progression of events.

We concur with the judge's conclusions to this point. We differ with the judge's view of the officer's next action. The judge concluded that the officer could go no further than stopping the vehicle and questioning the occupants, and that he exceeded his authority by ordering the passenger out of the car and searching it. The judge found that the search of the Mazda was not for the protection of his own and others' safety, although he did not explain the basis for this finding. The judge determined that the search was conducted "for contraband *qua* contraband," and that the officer did not have probable cause for a search for the gun as contraband.

"It is settled that in appropriate circumstances a *Terry* type search may extend into the interior of an automobile." *Commonwealth* v. *Almeida*, 373 Mass. 266, 270 (1977). Furthermore, "[w]hen police are justified in stopping an automobile, they may, for their safety and the safety of the public, order the occupants to exit the automobile." *Commonwealth* v. *Santana*, 420 Mass. 205, 212 (1995), citing *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977)[5]; *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978). To justify either the search or the order to the

justifiably or not, about whether Vazquez was licensed to carry a firearm is not germane to the officer's suspicion that an armed assault had occurred.

[4]The judge did not make a ruling as to whether the officer had probable cause to arrest Vazquez, in all likelihood because issues unique to Vazquez were not relevant to the ruling that the judge made, in the first instance, on the motion to suppress of the two women. On our review of the judge's findings and the record we conclude that the officer did have probable cause to arrest Vazquez.

[5]*Pennsylvania* v. *Mimms*, 434 U.S. 106, 109-110 (1977), established the rule that in a routine stop a police officer may order a driver out of a vehicle to protect the officer's safety. In *Maryland* v. *Wilson*, 117 S. Ct. 882, 884

occupants to exit the automobile, "we ask 'whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger.' " *Santana, supra* at 212-213, quoting *Almeida, supra* at 271. See *Commonwealth* v. *Owens,* 414 Mass. 595, 600 (1993). At the time the police officer ordered the passenger out of the Mazda, looked under the seat and found the gun, he already had reliable information from multiple witnesses that the public in a public thoroughfare had been exposed to danger, that a specific individual allegedly had been assaulted, that the alleged assailant no longer had a gun on his person, but that a gun may well have been in the Mazda. Having seen the interaction on the street between Vazquez and the passenger in the Mazda, the officer was not required to accept at face value the Mazda occupants' denial of any connection with Vazquez or the gun.

We have upheld searches and orders for occupants to leave an automobile when, given other suspicious circumstances which justified a stop, an officer had no information whatsoever that a gun may have been in the vehicle, but still had reason to be concerned with his and others' safety. See *Santana, supra* at 213; *Commonwealth* v. *Moses,* 408 Mass. 136, 141-142 (1990); *Almeida, supra* at 272. See also *Maryland* v. *Wilson,* 117 S. Ct. 882, 885 (1995), citing *Mimms, supra* at 109-110. Here, the officer confined his search to what "was minimally necessary to learn whether the suspect [was] armed." *Almeida, supra,* quoting *Commonwealth* v. *Silva,* 366 Mass. 402, 408 (1974). In these circumstances this officer had the right to order the passenger to leave the Mazda and conduct a minimal search at least.

We also conclude that the police had probable cause to search the automobile. Because the officer had probable cause to believe a crime had been committed by Vazquez and therefore was justified in his arrest of Vazquez, see note 4, *supra,* the question then becomes whether the officer had probable cause to believe that the evidence of Vazquez's crime, the gun (the "contraband *qua* contraband"), was in the Mazda. Probable cause to justify a search depends on a sufficient nexus between time, the criminal activity, the thing to be seized, and the place to be searched. 2 W. LaFave, Search and Seizure § 3.7(d), at 372 (3d ed. 1996 & 1998 Supp.). When he first approached

(1997), the Supreme Court held that the rule extended to automobile passengers.

Vazquez standing next to the Mazda, the officer had reason to believe he was arriving in the immediate aftermath of the commission of a crime. A disturbance drew the officer to the scene of the alleged crime, he reacted expeditiously to the street disturbance, and both the alleged assailant and the witnesses were still in the vicinity where the crime had been committed. The proximity in time between the alleged crime and the officer's investigation significantly narrowed the likelihood of finding the gun to the immediate vicinity of the suspect. Moreover, the officer was relying on his own firsthand knowledge that, wherever else Vazquez had been in the preceding minutes, he was indubitably standing next to the Mazda at that moment. At that moment Vazquez had the greatest incentive to rid himself of the gun, as only then had the police cruiser pulled up to him.[6]

Once the officer had probable cause to search the Mazda for the gun "*qua* contraband," he had a right to stop the Mazda. The only other impediment to a lawful search of the vehicle was the lack of a warrant, unless an exception to the warrant requirement applied. Because the automobile was stopped in a public place, with probable cause, the warrantless search of the vehicle was justified. *Commonwealth* v. *Motta*, 424 Mass. 117, 124 (1997).

The order allowing the motion to suppress is vacated. An order shall be entered in the Salem District Court denying the motion to suppress.

*So ordered.*

---

[6]The judge found this case similar to the facts in *Commonwealth* v. *Ferguson*, 410 Mass. 611 (1991). We reversed Ferguson's conviction of trafficking in cocaine because the judge had improperly denied the defendant's motion to suppress the cocaine evidence. The similarity with this case is that, while on patrol, an officer was flagged down by an alleged victim who told the officer that Ferguson had pointed a gun at her. The officer had suspicion sufficient only for a stop of Ferguson, while the many more witnesses and the immediate identification of Vazquez provided probable cause to arrest Vazquez. More important though was that the officer in *Ferguson* was searching for a weapon, found instead a black plastic bag, opened the bag, and found cocaine. The officer had no probable cause to search for cocaine, to believe that Ferguson was in possession of an illegal substance, or to open the bag once he knew it did not contain a gun. In this case, the officer had probable cause to search for a gun, which was the object that he found.