Grasso, J.
The defendant Raul Inoa (“Inoa”) was indicted by an Essex County Grand Jury on the charges of Possession of a Class B Substance with intent to Distribute and School Zone violation. Inoa now seeks to suppress all evidence seized by the police, without a search warrant, from the defendant’s person and from the blue Honda motor vehicle he was driving at the time of his arrest. Inoa asserts violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article XIV of the Massachusetts Declaration of Rights.
This court conducted a hearing on the defendant’s Motion to Suppress on January 13, 1998. For reasons set forth below, this court ALLOWS Inoa’s Motion to Suppress.
FINDINGS OF FACT
On April 30, 1997, at approximately 7:00 p.m., Lynn police officer Donald Kasle (“Kasle”) was on patrol in a marked cruiser when he overheard a police radio broadcast calling for a uniformed officer to assist other officers in making a stop of a motor vehicle believed to contain a passenger for whom an active arrest warrant was outstanding. This call was precipitated by the observations of officer Timothy Ferrari (“Ferrari"), who was patrolling in plain clothes and in an unmarked police vehicle together with officers Downey and Griffin. Ferrari had observed a blue Honda Accord operating in the vicinity of Western Avenue, Franklin Street and Layton Streets in Lynn with a passenger he recognized as Geraldo DeJesus. Ferrari believed there were active default warrants outstanding for DeJesus and he requested assistance of a marked police cruiser to effect the stop.
*477 Being close to the reported location, Kasle drove onto Layton Street where he observed the described blue Honda being followed by the unmarked police vehicle. Kasle activated his blue lights and wigwag lights to effect the stop. The Honda, which contained an operator and a passenger, pulled over to the left side of the one-way road promptly and without evasion. Prior to this point, Kasle did not observe the Honda to violate any motor vehicle laws.
Kasle emerged from his cruiser and went to the operator’s side of the vehicle, while Ferrari approached the passenger side. Ferrari recognized the passenger to be Geraldo DeJesus as he had believed. He asked the passenger if he were in fact Geraldo DeJesus, to which DeJesus replied affirmatively. Ferrari then asked DeJesus to get out of the vehicle and to walk to the rear passenger side of the Honda. At that point, Ferrari used his hand held radio to call the station to confirm whether there was still an active default warrant for DeJesus.
Meanwhile, Kasle asked the defendant to produce his driver’s license and the motor vehicle registration. He did so solely to determine whether Inoa was licensed and the motor vehicle registered and insured. At the time he made the request, Kasle had no suspicion that Inoa was engaged in any wrongdoing. Kasle had not seen Inoa violate any traffic laws. Neither had Inoa engaged in any furtive movements at the time of the stop that might have caused Kasle to be concerned either for safety or any possible criminal activily by Inoa. Two other Lynn police officers were present with Kasle and Ferrari.
Upon Kasle’s command, Inoa began to look for his license and registration. He fished around in his pants pocket, on the seat to his right, and “underneath” in the front compartment of the vehicle. Kasle was trying to keep an eye on Ferrari and DeJesus at the same time as he was observing Inoa. Inoa also looked at the passenger side of the vehicle, where Ferrari and DeJesus were standing.
After searching for 20 to 30 seconds, Inoa had failed to unearth a license or registration, and Kasle ordered Inoa out of the Honda. Kasle made no observations of the inside of the vehicle at the time Inoa got out. Instead, he ordered Inoa onto a grassy area where he began a pat frisk of Inoa. In the course of the frisk, he felt a hard object in Inoa’s pants pocket which he believed was a knife. He removed the object and found it to be a knife as suspected.
The court viewed the knife, which was introduced in evidence at the hearing. The knife is an ordinary-appearing, folding pocket knife. Upon his viewing the knife at the scene, Kasle thought that perhaps the blade was longer than 2V2", so he opened the knife and measured it using a scale “ruler” in his pocket diary. The entire length of the open metal blade measures 23/4". The length of the cutting portion of the metal, exclusive of the thicker metal which serves as the pivot for the blade to fold into the handle, measures 2V4".
Kasle promptly arrested Inoa for possessing a knife with a blade longer than 2V2" in violation of Section I of the Lynn City Ordinances of 1995 which provides in pertinent part:
No person . .. shall carry on his person, or cany on his person or under his control in a vehicle .. . any knife having any type of blade in excess of two and one-half (2V2") inches, (except when actually engaged in hunting or fishing or in going directly to and/or returning directly from such activities, or any employment which requires the use of any type of knife) . . .
Prior to arresting Inoa, Kasle did not ask whether Inoa was going to or returning from hunting, fishing, or work. Contrary to Kasle’s assertion at trial, I do not find that he even asked Inoa what the knife was for. I infer from the thoroughness of Kasle’s investigation to determine whether the blade might exceed 2[1]/2" and the promptness of his arrest of Inoa for possessing an item which ordinarily might not result in arrest that Kasle possessed a hunch and hoped to find a basis to arrest Inoa and to search him and/or the vehicle further.
Around the time that Kasle was placing Inoa under arrest, Ferrari was receiving confirmation that there was in fact an active default warrant outstanding for DeJesus. Up to this point, Kasle did not even know, if he ever came to know, the type of offense which had resulted in the warrant for DeJesus. His general concerns for safety had not prompted him to inquire into the nature of the offense for which the warrant had been issued for DeJesus. Nothing in Inoa’s (or DeJesus’) behavior or demeanor prior to the stop raised any specific safety concern. Kasle had never encountered Inoa previously and had no information which would cause concern specific to Inoa. Moreover, nothing in Inoa’s behavior upon being asked to produce a license or registration reasonably served to heighten Kasle’s general concern for safety. The length of time between the request to produce the license and the order to Inoa to get out of the vehicle was brief. DeJesus was on the other side of the vehicle with Ferrari, and Downey and Griffin were nearby. I do not credit Kasle’s assertion that part of his concern and reason for ordering Inoa out of the vehicle was due to Inoa’s searching “underneath” in the vehicle’s front compartment for the license and registration.
After arresting Inoa, Kasle entered the passenger compartment of the vehicle where he found a quantity of cocaine in the area to the right of the operator’s seat. While at the station, Inoa was subjected to an inventory search of his person. Police found $920 cash, a beeper, and a cigarette box containing marijuana. No evidence was introduced as to the written policy under which this search was said to have taken place.
*478 RULINGS OF LAW
Article Fourteen of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution prohibit unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 9 (1968). Ordinarily, for a search and seizure of a person to be reasonable, the police must have a search'warrant supported by probable cause to arrest. Warrantless searches are per se unreasonable unless they fall within one of the few narrowly drawn exceptions to the warrant requirements. Katz v. United States, 389 U.S. 347, 357 (1967).
Where the seizure of a person is brief and for a limited investigative inquiry — a stop — probable cause is not required. Rather, the police must have a reasonable suspicion based upon specific and articulable facts that the person is engaged in criminal activity. Terry v. Ohio, supra, 392 U.S. at 21; Commonwealth v. Thibeau, 384 Mass. 762, 763 (1981).
An officer is justified in stopping a person if the officer has “reason to suspect that a person has committed, is committing, or is about to commit a crime.” Commonwealth v. Silva, 366 Mass. 402, 405 (1974). The officer’s suspicion must be based on specific and articulable facts and reasonable inferences which follow from those facts in light of the officer’s experience. Id. A mere “hunch" or a “good faith” belief on the part of the officer is not sufficient to make a stop. Id. The officer “must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18 (1981). See also, Brown v. Texas, 443 U.S. 47, 51 (1979); Commonwealth v. Egan, 12 Mass.App.Ct. 658, 660 (1981). Article Fourteen of the Massachusetts Declaration of Rights and the Fourth Amendment of the United States Constitution bar the use of evidence seized through an illegal search and seizure. Commonwealth v. Ford, 394 Mass. 421, 426-27 (1985).
In the instant case, the Commonwealth does not contend that the discovery of the cocaine in the Honda was a search incident to the lawful arrest of DeJesus. Neither does the Commonwealth contend that the discovery of cocaine in the vehicle was a plain view seizure after Inoa exited the vehicle. Rather, the Commonwealth asserts that the warrantless seizure of the cocaine is justified as part of a search incident to Inoa’s lawful arrest. Further, the Commonwealth contends that the cocaine in the motor vehicle would have been inevitably discovered as part of the inventory search of an impounded motor vehicle. The Commonwealth, however, introduced no evidence of the written policies or procedures of the Lynn Police Department.
Whether the warrantless seizure of the cocaine in the vehicle is justified as a search incident to the purportedly lawful arrest of Inoa invites the predicate determinations of the legality of Kasle: (1) asking Inoa for his license and registration; (2) ordering Inoa out of the vehicle; and (3) pat-frisking Inoa. As each of these activities, which preceded discoveiy of the knife, was impermissible, the arrest itself would be unlawful and the evidence seized incident thereto must be suppressed. Although correct in retrospect, Kasle’s hunch that the vehicle might contain drugs does not provide a constitutional basis to search and arrest Inoa as he did.
1. Inquiries for Inoa’s drivers license and registration.
“The nature of the stop . . . defines the scope of the initial inquiry by a police officer.” Commonwealth v. Bartlett, 41 Mass.App.Ct. 468, 470 (1996) (where driver stopped for speeding, inquiry should pertain to status of driver’s license and automobile registration), and cases cited. Where an automobile stop is premised on the conduct or identity of one person in the car, police inquiry should be directed solely to that person, absent suspicious behavior by other occupants which gives rise to objective or particularized bases for suspecting that the others may be involved in criminal activity. See Commonwealth v. Torres, 424 Mass. 153, 157 (1997) (police who pulled over driver for speeding were not justified in interrogating defendant passenger, as police had no reasonable suspicion that defendant was involved in criminal activity).[1]
In the instant case, Officer Kasle had no lawful reason to order Inoa to produce a license and registration, as the purpose of the stop was to confirm the identity of Inoa’s passenger and effect his arrest on outstanding warrants. The Commonwealth does not claim that Inoa committed any traffic violations, or that he made furtive gestures or otherwise engaged in any suspicious conduct.[2] Because neither Kasle nor the other officers had any particularized or objective basis for suspecting that Inoa may have been involved in criminal activity, Kasle’s ordering Inoa to produce his license and registration was improper, see Commonwealth v. Torres, supra, 424 Mass. at 157.
2. Whether Kasle was justified in ordering Inoa out of the car.
As the vehicle stop focused on DeJesus rather than Inoa, and police did not observe Inoa committing any traffic violations, not only was Kasle’s demand for Inoa’s license and registration impermissible, but Inoa’s consequent inability to produce these did not justify Kasle ordering Inoa from the vehicle. See Commonwealth v. Torres, supra, 424 Mass. at 157.
To justify . . . the order to the occupants to exit the automobile, “we ask whether a reasonably prudent man in the policeman’s position would be warranted in the belief that the safety of the police or that of other persons was in danger.”
Commonwealth v. Vazquez, 426 Mass. 99, 103 (1997), quoting Commonwealth v. Santana, 420 Mass. 205, 212 (1995). Orders for occupants to leave an automobile and attendant searches are upheld when, “given *479 other suspicious circumstances which justified a stop, an officer... had reason to be concerned with his and others’ safety." Commonwealth v. Vazquez, supra, 426 Mass. at 103, and cases cited.[3]
Once police ascertained DeJesus’ identity and removed him from the vehicle, there was no basis for taking protective precautions with respect to Inoa. The stop of the vehicle took place on a city street in the early evening hours. There were four police officers present at the scene and only two occupants. There was no basis to believe the operator or passenger were armed or dangerous. No one asserts that any aspect of Inoa’s conduct gave Kasle reason to be concerned for his safety. Contrast Commonwealth v. Vazquez, 426 Mass. at 102-03 (police were authorized, for their safely and that of others, to order occupants from car and conduct limited search for weapon in car, where they reasonably inferred that suspect had handed weapon to passenger). Nor was Kasle’s order that Inoa exit the car legitimately based upon a concern that Kasle not stand exposed to moving traffic, as Inoa parked along the left side of a one-way street. See Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 337 (1977) (noting that officers may order driver out of the car and onto the shoulder of the road where inquiry may proceed with greater safety to both). In such circumstances, a reasonably prudent person in Kasle’s position would not be warranted in believing that the safety of police or other persons was in danger. Accordingly, the order for Inoa to exit the vehicle was improper.
3. The frisk.
A frisk incident to a stop is permissible when a police officer has reason to believe, based on specific and articulable facts, that the defendant is armed and dangerous. Commonwealth v. Rivera, 33 Mass.App.Ct. 311, 314-15 (1992); Commonwealth v. Silva, 366 Mass. 402, 405 (1974). More than mere propinquity between Inoa and DeJesus is required to justify the frisk of Inoa. Contrast Commonwealth v. Wing Ng, 420 Mass. 236, 241 (1995) (police attempting to arrest armed robbery suspect were justified in frisking suspect’s brother, with whom suspect had been seen on various occasions since the robbeiy, where it could be reasonably inferred that brother might have participated in robbery and might be armed at time of attempted arrest).
On the facts of this case, Officer Kasle had no reasonable grounds to believe that Inoa (or DeJesus) was armed or dangerous. He had no knowledge whether the crime for which DeJesus was wanted on warrants involved violence.[4] Inoa had not been evasive; he pulled the car over promptly at the officer’s signal. There is nothing on the record indicating that Inoa acted furtively, in an unusually nervous manner, or otherwise suspiciously in Kasle’s presence. Moreover, there is no suggestion that Kasle’s observation of the cocaine was a plain view seizure after Inoa exited the vehicle.
Absent any reasonable suspicion by Kasle, based on specific and articulable facts, that Inoa was armed or dangerous, Kasle was not warranted in pat-frisking Inoa. Kasle had no basis to frisk or to search Inoa. Accordingly, the knife seized in the course of the frisk must be suppressed, and any arrest for illegal possession of the knife as well as any search incident to the arrest must also fall as the fruit of an illegal search.[5]
ORDER
For the foregoing reasons, this court ORDERS that the defendant’s motion to suppress be ALLOWED.

 But see Commonwealth v. Blake, 23 Mass.App. Ct. 456, 462-63 (1987) (“A request for license and registration is routine and permissible in a threshold stop of a motor vehicle, whether ownership does, or does not, have a possible relation to suspected criminal activity”). Blake is factually distinguishable from the instant case. In Blake, police stopped a car after receiving a tip that both occupants were dealing drugs. Police were justified in asking one of the suspects, the driver, for his license and registration.

 Kasle’s assertion that he became concerned when Inoa reached under the seat, even if believed, concerns activity that did not occur until after Kasle demanded him to produce his license and registration and was in response to Kasle’s request.

 This Commonwealth appears to apply a more restrictive standard than the Supreme Court regarding police orders for occupants to exit vehicles. In Maryland v. Wilson, 117 S.Ct. 882, 886 (1997), the Supreme Court held that an officer making a traffic stop may order passengers out of the car because danger to an officer is likely to be greater when there are passengers. In Maryland v. Wilson, a police officer effected a traffic stop of a vehicle with three occupants, whom he ordered out of the car after two occupants appeared inordinately nervous.

 DeJesus was wanted on drug offenses.

 This court need not reach the issue of whether Kasle’s opening the knife to determine the blade length is itself a search requiring probable cause. Even if opening the knife satisfied probable cause requirements, Kasle was not justified in arresting Inoa pursuant to the Lynn ordinance or conducting the search of the vehicle incident to that arrest without first inquiring whether Inoa was using the knife for some legal purpose, such as hunting or fishing. See Commonwealth v. Couture, 407 Mass. 178, 181 (1990) (police had no probable cause to arrest defendant for gun possession without first inquiring whether he had a license); Commonwealth v. Toole, 389 Mass. 159, 163-64(1983) (suppressing gun seized during search, where police had no probable cause to conduct search; although police had probable cause to believe that defendant’s car contained gun, police did not learn that defendant had no firearm identification until after the search). Without probable cause to arrest Inoa, any vehicle and inventory searches arising out of the arrest would be unlawful. Accordingly, all evidence so obtained from would be suppressed. See Murray v. United States, 487 U.S. 533, 536-37 (1988) (barring admission into evidence of materials seized during or as result of unlawful search).