## COMMONWEALTH *vs.* JOHN F. TOMEO.

Essex. February 2, 1987. — May 14, 1987.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Protective Custody. Arrest. Search and Seizure*, Arrest.

There was no error in a judge's denial of a defendant's pretrial motion to
suppress as evidence a .38 caliber revolver seized from him after he had
been taken into protective custody pursuant to G. L. c. 11B, § 8, sub-
jected to a pat-down search, and arrested for carrying a firearm without
a license where a police officer, having had ample reason to conclude
that the defendant was intoxicated and that he was about to drive away
in his automobile, was entitled to place the defendant in protective
custody and where, a second officer, having observed an object protrud-
ing from under the defendant's belt, could have reasonably concluded
that the officers' safety justified their pat-down search of the defendant.
[24-25]

INDICTMENT found and returned in the Superior Court De-
partment on January 23, 1985.

A pretrial motion to suppress evidence was heard by *John
T. Ronan*, J., and the case was tried before *James D. McDaniel,
Jr.*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Joseph E. Marino* for the defendant.

*Lila Heideman*, Assistant District Attorney, for the Com-
monwealth.

LIACOS, J. The defendant was convicted by a jury in the
Superior Court in Essex County of carrying a firearm without
a license in violation of G. L. c. 269, § 10 (*a*) (1984 ed.).
The defendant appeals, claiming error only as to the denial of
his motion to suppress the weapon. We transferred the case
to this court on our own motion, and we affirm.

We summarize the facts. On April 21, 1984, Officer John Coburn of the Saugus police department was on paid detail providing security for the patrons of a Saugus drinking establishment. An employee of that establishment told the officer that a man in a very intoxicated condition was leaving the premises, walking toward the parking lot. The officer observed that the defendant dropped his keys, was very unsteady on his feet, and was attempting to enter his motor vehicle. The officer asked the defendant to take a taxicab rather than drive. The defendant agreed, waited approximately fifteen minutes, then stated that he would wait no longer. The officer again advised the defendant not to drive. The defendant's speech was slurred, and he smelled of alcohol. When the defendant insisted on driving, the officer informed the defendant that he was placing him in protective custody. G. L. c. 111B, § 8.[1] He called for back-up assistance from a police cruiser nearby. As Officer Coburn was placing handcuffs on the defendant, Officer Herbert Collibee arrived and conducted a pat-down search. He discovered a loaded .38 caliber revolver tucked inside the defendant's belt. The defendant could not produce a license for possession of a firearm. He then was arrested. The officers advised the defendant of his Miranda rights, transported him to the Saugus police station, and booked him for possession of the firearm.

In this case, Officer Coburn had ample reason to conclude that the defendant was intoxicated, and that he was about to attempt to drive away in his automobile, which the officer reasonably could conclude would pose a risk to the defendant's "safety or the safety of other persons." G. L. c. 111B, § 8.

---

[1] General Laws c. 111B (1984 ed.) authorizes a police officer to assist to a police station "[a]ny person who is incapacitated" by intoxication, G. L. c. 111B, § 8, and who is "likely to suffer or cause physical harm or damage property," G. L. c. 111B, § 3.

The incapacitated person may also be assisted to his residence or to a detoxification facility. G. L. c. 111B, §§ 3, 8. The intoxicated person may also be deemed "incapacitated" for purposes of G. L. c. 111B if, by reason of the consumption of intoxicating liquor, he is unconscious, in need of medical attention, or disorderly. G. L. c. 111B, § 3.

Thus, the officer was entitled, under the statute, to seek to take the defendant in protective custody.[2]

Under G. L. c. 111B, § 8, if a police officer reasonably believes that his safety so requires, he may search an incapacitated person "to discover and seize any dangerous weapons." Here, the defendant became unruly when no taxicab arrived, and he insisted on seeking to drive his automobile, although apparently highly intoxicated. He tried to pull away when Officer Coburn tried to handcuff him. There was only one handcuff on the defendant when Officer Collibee arrived. The defendant's jacket was open, and Officer Collibee "felt a bulge coming from the belt area" and "observed a handle sticking out of his belt." The officers could conclude reasonably that their safety justified their pat-down search of the defendant.[3]

The defendant argues that his detention and the seizure of his gun were unreasonable because the officers failed to inform him of the rights enumerated in G. L. c. 111B, particularly of his right to be administered a breathalyzer test. However, the right to be informed of the breathalyzer test arises at the police station. "Any person assisted by a police officer to a police station shall have the right . . . to request and be adminis-

---

[2] The defendant does not contest the validity of the statute.

[3] The defendant also argues that the officers violated his rights under the Fourth Amendment to the United States Constitution or under art. 14 of the Massachusetts Declaration of Rights because, he claims, they lacked a reasonable basis to believe that their safety, or the safety of others, required them to search him. This argument is without merit. One of the officers testified that the frisk was conducted before placing the defendant in the cruiser "to see if there would be any weapon found or anything dangerous to myself." Although the motion judge made no written findings, his denial of the motion to suppress implicitly rules this belief to be reasonable in the circumstances. See G. L. c. 111B, § 8. See also *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 129-130 (1984); *Pennsylvania* v. *Mimms*, 434 U.S. 106, 110 (1977); *Terry* v. *Ohio*, 392 U.S. 1 (1968). We note also that, even apart from the statute, the officer had a right to make a *Terry* stop of one about to commit a crime, e.g., operating a motor vehicle while under the influence, and operating so as to endanger the lives and safety of the public, G. L. c. 90, § 24 (1984 ed.). See G. L. c. 90, § 21. See also *Irwin* v. *Ware*, 392 Mass. 745, 766 (1984).

tered a breathalyzer test." G. L. c. 111B, § 8.[4] By the time the defendant arrived at the station, he was under arrest for carrying a firearm without a license. Once the defendant was arrested for unlawful possession of a firearm, the protective custody statute became irrelevant.

The defendant's motion to suppress was properly denied.

*Judgment affirmed.*

---

[4] Although Officer Coburn told the defendant that he was taking him in "protective custody" at the parking lot, the officers discovered the revolver and arrested the defendant without ever placing him in protective custody. The intervening discovery of the loaded, unlicensed revolver, and the subsequent arrest, superseded rights he otherwise might have had under the provisions of G. L. c. 111B.