APPEALS COURT 
 
 COMMONWEALTH vs. RAYMOND J. VERRIER

 
 Docket:
 24-P-446
 
 
 Dates:
 April 16, 2025 – September 8, 2025
 
 
 Present:
 Rubin, Neyman, & Tan, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Protective Custody. Controlled Substances. Firearms. Intoxication. Probable Cause. Practice, Criminal, Motion to suppress.
 
 

             Complaints received and sworn to in the Chelsea Division of the District Court Department on March 21 and 24, 2022.
            After consolidation, a pretrial motion to suppress evidence was heard by William G. Farrell, J., and conditional pleas of guilty were accepted by Jane Prince, J.
            Anne O'Reilly for the defendant.
            Brynn M. Morse, Assistant District Attorney (Kate L. Fraiman, Assistant District Attorney, also present) for the Commonwealth.
            RUBIN, J.  This case involves the level of suspicion of incapacitation necessary to place an individual into protective custody under G. L. c. 111E, § 9A, part of the "Drug Rehabilitation Law," G. L. c. 111E, §§ 1.  We conclude that, as the Supreme Judicial Court has decided with respect to placing an individual into protective custody under the parallel provision of G. L. c. 111B, the Alcohol Treatment and Rehabilitation Law (Alcohol Rehabilitation Law), the proper standard is probable cause, see Commonwealth v. O'Brien, 434 Mass 615, 622 (2001), and that it was met in this case.
            1. Background.  The defendant was placed in protective custody on the basis that he was incapacitated within the meaning of the Drug Rehabilitation Law.  See G. L. c. 111E, § 9A.  It is undisputed that before placing the defendant in an ambulance, Chelsea police officer Timothy McCarthy pat frisked the defendant, finding a loaded firearm.  Officer McCarthy then placed the defendant under arrest and searched him incident to that arrest, finding drugs on his person.  The defendant was charged with a number of counts based on possession of the firearm and possession of Class B and Class E drugs.  
            The defendant filed a motion to suppress.[1]  The judge denied it, concluding that the officer had "an objectively reasonable belief that the defendant's safety and well-being were at risk" at the time the officer placed him in protective custody.  
            The defendant subsequently conditionally pleaded guilty to three counts:  carrying a firearm without a license, G. L. c. 269, § 10 (a), possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h) (1), and defacing the serial number on a firearm, G. L. c. 269, § 11C.  The pleas to these three offenses were conditioned on the defendant's right to appeal from the denial of the motion to suppress.[2]  See Commonwealth v. Gomez, 480 Mass. 240, 241 (2018) (permitting such conditional guilty pleas).  That is the appeal we have before us.
            2. Facts.  "In reviewing a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error . . . .  We may supplement those findings if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony.  We independently determine the correctness of the judge's application of constitutional principles to the facts as found" (quotations and citations omitted).  Commonwealth v. Figueroa, 468 Mass. 204, 209 (2014).  In this case, the motion judge made detailed findings of fact and explicitly found the testimony of Chelsea police officer Timothy McCarthy credible.  Except where otherwise noted, the following facts, including the quoted language infra, are taken from those findings.
            While uniformed and working in a marked police vehicle on a Saturday, McCarthy received a radio call "for a man who was described by clothing and who appeared to be needing help because he was either drunk or under the influence of drugs."  McCarthy was trained to recognize when a person is under the influence of drugs and alcohol by looking for evidence of, among other things, a lack of balance, pinpoint pupils, swaying, slurred speech, and lack of responsiveness.  McCarthy went to the busy shopping center to which he had been directed and "immediately recognized" the defendant from the description of his clothing "and because the defendant was swaying on the sidewalk, staring up to the sky with his eyes closed in the rain, appearing unbalanced on his feet and to be in need of help."  McCarthy observed the defendant's "knees buckle as he tried to regain his balance."
            People were walking near the defendant and cars were driving on the road nearby.  The judge found that McCarthy reasonably feared "that the defendant would fall and injure himself or others, step into traffic or fall into the traffic in the active roadway."
            After observing the defendant for about a minute, McCarthy spoke with him.  McCarthy was in uniform, but the defendant did not notice him when he approached.  "The defendant continued to stare blankly.  It was transmissions over McCarthy's radio speaker that got the defendant’s attention."  At McCarthy's request, the defendant agreed to move away from the road and out of the rain, and the defendant agreed to speak to the officer.  "The defendant's speech was slurred, his eyes pinpoint[,] and he was swaying and unsteady on his feet.  It was obvious to McCarthy that the defendant was under the influence of something, either alcohol or drugs.  McCarthy noticed a white stain on the defendant’s pants and a substance on his nostrils that was dark colored," which McCarthy believed were indications of opiate use.  "The defendant told McCarthy that he had been up for five days and that he had taken the medications Ambien and Tylenol PM," but "denied having taken any drugs or alcohol which was inconsistent with what the officer saw."  McCarthy radioed a request for an ambulance to take the defendant to a hospital.  The defendant initially agreed to be seen at the hospital but later changed his mind.
            "The defendant told McCarthy that he had recently overdosed, that he had used fentanyl and methamphetamines in the past and that he just got out of jail."  McCarthy testified that the defendant also told him that because he had just gotten out of jail, he was "not used to the substances like he used to be," that is, that his tolerance for drugs was lower than it had been before.  This concerned McCarthy.  When the defendant changed his mind about going to the hospital and wanted to depart, "McCarthy told the defendant that he was not under arrest but he could not leave because he was in protective custody for his well-being in order to receive medical care at the hospital."  The judge found that all the facts and circumstances described supra gave rise to reasonable suspicion that the defendant was incapacitated within the meaning of the c. 111E, § 9A, the Drug Rehabilitation Law.
            For the safety of the emergency medical technicians (EMTs), knowing that "people who use narcotics may have sharps or needles that could injure the EMTs," and that users "may also carry weapons," "McCarthy asked the defendant if he had any weapons."  Then, "McCarthy asked the defendant to stand up and he conducted a pat frisk for weapons.  The defendant did not consent to the pat frisk.  McCarthy felt an object and recognized it immediately as the handle of a firearm.  McCarthy removed a holstered, loaded firearm from the defendant's waistband.  The defendant said he did not have a license to carry firearms.  The defendant was informed that he was under arrest and was placed in custody."  A further search of the defendant uncovered what the officer believed to be drugs on the defendant's person in his groin area.  The ambulance arrived and while under arrest the defendant was taken in it to the hospital and after examination, he was taken to the police station and booked.
            3. Discussion.  The primary question before us is whether the police must have reasonable suspicion or probable cause to believe that an individual is incapacitated within the meaning of G. L. c. 111E, § 9A, the Drug Rehabilitation Law before that individual may be placed in protective custody.  No independent argument is made about the propriety of the patfrisk or the subsequent search and we therefore need not and do not address them.
            a. The Drug Rehabilitation Law and the Alcohol Rehabilitation Law.  The Drug Rehabilitation Law and the Alcohol Rehabilitation Law both have provisions seeking to protect incapacitated individuals by allowing police officers to place them in protective custody when warranted.  Section 9A of the Drug Rehabilitation Law provides,
            "Any person who is incapacitated may be placed into protective custody by a police officer without the person's consent for the purpose of immediately transporting the person to an acute care hospital or satellite emergency facility . . . or otherwise immediately obtaining appropriate emergency medical treatment.  For the purposes of this section, to determine whether or not a person is incapacitated, a police officer may request the person to submit to reasonable tests of coordination, coherency of speech and breath.  A police officer may place the person into protective custody when such tests or other information or observations indicate that the person is incapacitated . . . .
            "A person may not be held in protective custody against the person's will beyond the time required to complete the person's immediate transport to an acute care hospital or satellite emergency facility . . . , or to otherwise immediately obtain appropriate emergency medical treatment. . . .
            "If the police officer reasonably believes that there may be a risk to the safety of the incapacitated person, the safety of the officer or the safety of other persons present, the police officer may search the person and the immediate surroundings of the person placed into protective custody but only to the extent necessary to discover and seize any items or weapons which may pose a danger."
G. L. c. 111E, § 9A.
            The term "incapacitated," for the purposes of § 9A, mean[s] "the condition of a person who, by reason of the consumption of a controlled substance or toxic vapor or other substance other than alcohol is: (i) unconscious; (ii) in need of medical attention; (iii) likely to suffer or cause physical harm or damage property; or (iv) disorderly."
            The Drug Rehabilitation Law, G. L. c. 111B, is a companion to the Alcohol Rehabilitation Law.  Under the Alcohol Rehabilitation Law,
            "[a]ny person who is incapacitated [by reason of consumption of intoxicating liquor] may be assisted by a police officer with or without his consent to his residence, to a facility or to a police station or the Dukes county sheriff's office. . . .
            "If any incapacitated person is assisted to a police station or the Dukes county sheriff's office, the officer in charge or his designee shall notify forthwith the nearest facility that the person is being held in protective custody.  If suitable treatment services are available at a facility, the department shall thereupon arrange for the transportation of the person to the facility in accordance with the provisions of section seven. . . .
            "[I]f suitable treatment at a facility is not available, an incapacitated person may be held in protective custody at a police station or the Dukes county sheriff's office until he is no longer incapacitated or for a period of not longer than twelve hours, whichever is shorter."
G. L. c. 111B, § 8.
            Critically, with the exception of the substance that causes an individual to be incapacitated, the definition of "incapacitated" in the Alcohol Rehabilitation Law is identical to that in the Drug Rehabilitation Law.  See G. L. c. 111B, § 3 (incapacitated means "the condition of an intoxicated person who, by reason of the consumption of intoxicating liquor is (1) unconscious, (2) in need of medical attention, (3) likely to suffer or cause physical harm or damage property, or (4) disorderly").
            b. The standard for placing an individual in protective custody.  In O'Brien, 434 Mass at 622, a case involving the Alcohol Rehabilitation Law, the Supreme Judicial Court held that, "to take someone into protective custody, officers need . . . probable cause to believe that the person is 'incapacitated' within the meaning of G. L. c. 111B, § 3."[3]  This holding overruled this court's conclusion in Commonwealth v. McCaffery, 49 Mass. App. Ct. 713, 716 (2000), that the reasonable suspicion standard was the appropriate one to determine whether an individual could constitutionally be taken into protective custody under G. L. c. 111B, § 8.
            Because there is no material difference between the protective custody authorized by the Alcohol Rehabilitation Law and that authorized by the Drug Rehabilitation Law, we conclude that the level of suspicion necessary for police to place an individual into protective custody under the Drug Rehabilitation Law is the same as the standard for doing so under the Alcohol Rehabilitation Law: probable cause to believe the individual is incapacitated within the meaning of the statute.
            The Commonwealth acknowledges the O'Brien standard under the Alcohol Rehabilitation Law but argues that the protective custody provided for under the Drug Rehabilitation Law is distinguishable from that provided for under the Alcohol Rehabilitation Law.  It notes that "[u]nlike the alcoholism treatment and rehabilitation statute, . . . which allows Officers to place incapacitated people in protective custody in a cell at a police station for up to twelve hours, G. L. c.  111B, § 8, a person held under the drug rehabilitation statute 'may not be held in protective custody against the person's will beyond the time required to complete the person's immediate transport to an acute care hospital or satellite emergency facility . . . or to otherwise immediately obtain appropriate emergency medical treatment.'  G. L. c.  111E, § 9A."
            Although it is true, as the Commonwealth observes, that the police may, if no treatment facility is available, place a person in protective custody under the Alcohol Rehabilitation Law in a cell, see G. L. c. 111B, § 8, the requirement of probable cause does not depend on that possibility.  Under the Alcohol Rehabilitation Law, the statute actually authorizes the police to assist anyone placed in protective custody to a police station[4] and then transport them to a treatment facility.  Id.  Except for having to stop at the police station, this is the same as what is required under the Drug Rehabilitation Law at issue here, where those placed in protective custody are to be transported to an emergency medical facility.  See G. L. c. 111E, § 9A.  It is the placement in protective custody that requires probable cause.  That is true whether the individual is believed to be intoxicated by alcohol or, instead, by drugs or other non-alcohol substances.  And it is clear that under the Alcohol Rehabilitation Law, as under the Drug Rehabilitation Law, an individual is placed in protective custody when the nonconsensual detention begins.  See, e.g., Commonwealth v. Tomeo, 400 Mass. 23, 24-25 (1987) (officer lawfully took "the defendant in protective custody" outside a "Saugus drinking establishment").
            c. The presence of probable cause.  The parties are not in agreement about whether there was probable cause to believe that the defendant was incapacitated within the meaning of the statute at the time he was placed in protective custody.  The Commonwealth argues that there was; the defendant argues the opposite.
            "[W]hen analyzing probable cause, we look to the entire set of facts and circumstances within the knowledge of the police."  Commonwealth v. Privette, 491 Mass. 501, 530 (2023).  Given the facts and circumstances of this case described supra, including the defendant's own words, we conclude that at the time the defendant was placed in protective custody prior to the patfrisk, McCarthy had probable cause to believe that the defendant was incapacitated within the meaning of the Drug Rehabilitation Law.
            Consequently, the order denying the motion to suppress is affirmed.  The August 15, 2022 order denying the defendant's motion to dismiss also is affirmed.
So ordered.
 
footnotes

 
            [1] Two separate complaints issued against the defendant, and there were, therefore, two different docket numbers below.  These two cases, however, were consolidated for consideration of the defendant's motion to suppress.
            [2]The pleas were also subject to appellate review of a separate August 15, 2022, order denying the defendant's motion to dismiss.  Although the defendant's notice of appeal includes the denial of his motion to dismiss and the judgment itself, the defendant's arguments address only the motion to suppress.
            [3] Of course, the label given to the type of detention is irrelevant; the question is the degree of intrusion on Fourth Amendment interests.  See Dunaway v. New York, 442 U.S. 200, 216 (1979).
            [4] Or the Dukes county sheriff's office.